PD-0290-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/10/2015 12:00:00 AM
Accepted 8/10/2015 8:34:39 AM
ABEL ACOSTA
CLERK

# No. PD-0290-15

In the

## Court of Criminal Appeals

## Of the State of Texas

---

### John Dennis Clayton Anthony, *Appellant*

### v.

### STATE OF TEXAS, *Appellee*

---

| **Trial Court** | **Appellate Court** |
| --- | --- |
| **Cause No. 2557** | **Cause No. 07-14-00249-CR** |
| 287th District Court | Seventh District of Texas |
| in Bailey County | at Amarillo |

---

## BRIEF OF APPELLANT ON THE MERITS

---

*TROY BOLLINGER*
**State Bar No. 24025819**
**600 Ash Street**
**Plainview, Texas 79072**
**Tel.: (806) 293-2618**
**Fax: (806) 293-8802**
**troy@laneybollinger.com**

### ORAL ARGUMENT WAIVED

## STATEMENT REGARDING ORAL ARGUMENT

*Appellant waives oral argument.*

## NAMES OF ALL PARTIES

*Appellant:*
    *JOHN DENNIS CLAYTON ANTHONY*

Trial Judge:    **Hon. Gordon H. Green.**


Trial counsel for Appellant:
    *Plea of Guilty*:   **Terry McEachern,**
Attorney at Law, 700 Broadway, #20, Plainview, Texas 79072.
    *Adjudication of Guilt*:   **Christian Pollard,**
Attorney at Law, 700 Broadway, Plainview, Texas 79072.


Appellate Counsel for Appellant:
    *Court of Appeals*:   **Don F. Schofield,**
Attorney at Law, 112 W. 8th, Suite 530, Amarillo, Texas 79101.
    *Court of Criminal Appeals*:   **Troy Bollinger,**
Laney & Bollinger, 600 Ash Street, Plainview, Texas 79072.


Trial counsel for the State:    **Kathryn Gurley,**
District Attorney, P.O. Box 729, Friona, Texas 79035.


Appellate counsel for the State:
    *Court of Appeals*:   **Kathryn Gurley,**
District Attorney, P.O. Box 729, Friona, Texas 79035.
    *Court of Criminal Appeals*:   **Lisa C. McMinn,**
State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas 78711.

# TABLE OF CONTENTS

**HEADING**                                                                    **PAGE #**

STATEMENT REGARDING ORAL ARGUMENT.................................................................. ii

NAMES OF ALL PARTIES.......................................................................................... ii

INDEX OF AUTHORITIES ........................................................................................... v

STATEMENT OF THE CASE........................................................................................ 7

STATE'S ISSUES ....................................................................................................... 8

RESPONSE TO STATE'S ISSUE ................................................................................. 9

APPELLANT'S ISSUES.............................................................................................13

STATEMENT OF CONTESTED & SUPPLEMENTAL FACTS............................................13

SUMMARY OF THE ARGUMENT ...............................................................................17

ARGUMENT...........................................................................................................18

    THE STATE'S ARGUMENTS ................................................................................19

        DID THE COURT ERR BY HOLDING THAT APPELLANT WAS INELIGIBLE FOR DEFERRED: THE JUDGEMENT ENTRY. ..................................................................19

        DID THE COURT ERR BY FINDING TRIAL COUNSEL INEFFECTIVE...................23

        DID THE COURT ERR BY FINDING TRIAL COUNSEL INEFFECTIVE: 'THRESHHOLD ARGUMENTS'.......................................................................................26

    THE APPELLANT'S ARGUMENTS .......................................................................28

    *Trial Counsel  was ineffective in the present case.*..............................................28

        STANDARD.................................................................................................28

        APPLICATION .............................................................................................29

        *BRIEF INTERMISSION*................................................................................31

    *The original plea was void for statutory reasons and because it was neither voluntarily or knowingly made.* .............................................................................35

        FACTS .......................................................................................................36

        APPLICATION .............................................................................................41

    *The State's requested relief is not proper in this matter..* ..................................45

CONCLUSION .......................................................................................................48

PRAYER ...............................................................................................................49

CERTIFICATE OF SERVICE................................................................................51

CERTIFICATE OF COMPLIANCE .....................................................................52

# INDEX OF AUTHORITIES

**CASE OR CITE**                                                                                    **PAGE #**

## Cases

*Aguilar v. State*, p2, Tex: Court of Appeals, 7th Dist. 2015 –(April 2015) ............................12

*Anthony v. State*, Appellate Cause Number 07-13-00089-CR, February 12, 2015 ........passim

*Brown v. State*, - Tex: Court of Criminal Appeals 2014 (March 19, 2014) {opinion
   withdrawn} ....................................................................................................................41

*Brown v. State*, 439 SW 3d 929 - Tex: Court of Criminal Appeals 2014 (June 18, 2014) ....41

**Casey v. State**, 924 S.W.2d 946 (Tex.Crim.App. 1996).................................................43

*Ex parte Burns*, 601 S.W.2d 370 (Tex. Crim. App. 1980).............................................29

*Ex Parte Marble*, 443 SW3d 129 (Tex.Crim.App – 2014) ............................................25

*Ex Parte Welborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990)...................................10, 30

*Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App. 1986) ...................................12, 28

*Lindsey v. State*, 310 S.W.3d 186 (Tex. App.-Amarillo 2010, no pet.)............................42

*McCarthy v. United States*, 394 U.S. 459 (1969)........................................................25

*McDaniel v. State*, 98 S.W.3d 704 (Tex. Crim. App. 2003)...........................................42

**McMann v. Richardson,** 397 U.S. 759, 771 (1970). ....................................................28

*Moore v. State*, 983 S.W.2d 15 (Tex.App.— Houston [14th Dist.] 1998, no pet.). ................28

*Padilla v. Kentucky*, 130 S. Ct. 1473 - Supreme Court 2010 .......................................30

*Pate v. Robinson*, 383 U.S. 375 (1966) ..............................................................42, 44

*Perez v. State*, 310 S.W.3d 890 (Tex. Crim. App. 2010)..............................................29

*Powell v. Alabama*, 287 U.S. 45 (1932) ....................................................................28

*Robinson v. State*, 16 S.W.3d 808 (Tex. Crim. App. 2000). ..........................................29

*Rodriguez v. State*, 329 SW 3d 74 - Tex: Court of Appeals 2010 ...................................43

*Strickland v. Washington*, 466 U.S. 668 (1984).........................................10, 12, 33, 35

*Thompson v. State,* 9 SW3d 808 Tex.Crim.App. – 1999) .............................................10

*Turner v. State*, 422 SW 3d 676 - Tex: Court of Criminal Appeals 2013..............................43

## Statutes

**Texas Code of Criminal Procedure**, Article 42.12, Section 3(e)(1).....................................11

**Texas Code of Criminal Procedure**, Article 42.12, Section 5(d)(3)(B)................................11

**Texas Code of Criminal Procedure,** Article 46B................................................passim

**Texas Code of Criminal Procedure**, Article 46B.004 ..................................................35

**Texas Code of Criminal Procedure**, Article 46B.004 (d) ..........................................38, 43, 46

**Texas Code of Criminal Procedure**, Article 46B.005 (a) ................................................. 38, 44

**Texas Code of Criminal Procedure**, Article 46B.005 (c) ....................................................... 43

**Texas Code of Criminal Procedure**, Article 46B.022 ................................................. 15, 38, 40

**Texas Code of Criminal Procedure**, Article 46B.024 ........................................................... 15

**Texas Code of Criminal Procedure**, Article 46B.025 ..................................................... 16, 40

**Texas Code of Criminal Procedure**, Article 46b.026 ........................................................... 16

**Texas Code of Criminal Procedure**, Article 62.051(c)(3) .................................................... 22

**Texas Penal Code**, Section 22.021 (f) ............................................................... 11, 15, 32

**Texas Rules of Appellate Procedure,** Rule 34.5(a)(2) ..................................................... 16, 22

**Texas Rules of Appellate Procedure**, Rule 38.2(B) ............................................................. 14

**Texas Rules of Appellate Procedure,** Rule 68.11 ................................................................. 51

**Texas Rules of Appellate Procedure,** Rule 9.4 .................................................................... 52

**Texas Rules of Appellate Procedure,** Rule 9.5 .................................................................... 51

## Constitutional Provisions

**TEX. CONST**. art. I, §10 .............................................................................................. 28

**U.S. CONST**. amends. VI and XIV ............................................................................... 28

**TO THE HONORABLE COURT OF CRIMINAL APPEALS**

## STATEMENT OF THE CASE

Appellant is **mostly** satisfied with the State's description in its "Statement of the Case". It is technically correct, but it does invite this Honorable Court to ignore one fact of enormous importance. The Seventh Court of Appeals only ruled upon <u>one</u> of the Appellant's three points of error. Justice Pirtle specifically stated:

> "***Having found Appellant was denied effective assistance of counsel in violation of the Sixth Amendment, we sustain issue three and reverse the judgment of the trial court. Our disposition of issue three makes it unnecessary for us to address Appellant's first and second issues***"[1].

The Court of Appeals did not make a specific finding as to the Trial Court's abuse of discretion in violating Article 42.12, section 5(d)(3)(B) of the **Texas Code of Criminal Procedure.** The State's arguments largely focus on this issue. This is an issue which the Seventh Court of Appeals specifically found 'unnecessary' to address.

---

[1] ***Anthony v. State***, (this case), p9, Appellate Cause Number 07-13-00089-CR, February 12, 2015.

7

Additionally, and of greater importance, the Court of Appeals left unaddressed the extremely important issue of whether Appellant's plea was knowingly or voluntarily made.

If this Honorable Court were to somehow find that Mr. Anthony was <u>not</u> in fact denied effective assistance of counsel, the remedy would not be that sought by the State. The State's position that this Honorable Court granting their requested relief "*would resolve Appellant's claims*"[2] could not be further from correct.

## STATE'S ISSUES

*1) When Appellant pled guilty to sexual assault of a child under fourteen, did the court of appeals err by holding that he was ineligible for deferred adjudication because the child was under six, based on an unexplained finding in the judgment that was not pled, supported by the record, or orally pronounced?*

*2) Did the court of appeals err by finding deficient performance and prejudice due to counsel's advice that Appellant was eligible for deferred adjudication when there is no evidence of how counsel advised*

---

[2] **State's Brief on the Merits**, p 11.

*Appellant, no evidence of how that advice affected the plea, and Appellant actually received deferred adjudication?*

*3) Did the court of appeals err by finding ineffective assistance of counsel based on an unexplained finding in the judgment without addressing the State's threshold arguments about the validity of the judgment entry, preservation, and estoppel?*

## RESPONSE TO STATE'S ISSUE

The State's issues ignore the specific holding of the Court of Appeals' Opinion. The Court's findings, in the Majority Opinion, are that:

1) "***we find the record clearly establishes that the performance of Appellant's trial counsel was deficient in that it fell below the prevailing professional norms. Based on our examination of the entire record, we hold Appellant has established the first prong of the Strickland test by a preponderance of the evidence.[3]***" and then,

2) "***...but for counsel's errors, there is also a reasonable probability the result of the proceeding would have been different. Under Strickland, that is sufficient to undermine***

---

[3] ***Anthony v. State***, (this case), p6, Appellate Cause Number 07-13-00089-CR, February 12, 2015

*confidence in the outcome of the proceeding. Accordingly, Appellant has satisfied the second prong of the Strickland test for establishing ineffective assistance of counsel.[4]*"

It is telling that the State's "Brief on the Merits" does not ever cite to *Strickland v. Washington[5]*, *Ex Parte Welborn[6]*, or any of the other cases[7] one would expect to see in response to the above findings.

The only clear reference to an '*ineffective assistance*" case is the truism that "*a claim of ineffective assistance of counsel must be "firmly founded in the record*"[8].

Clearly, the Justices of the Seventh Court of Appeals know this fundamental requirement. The Appellate Opinion cites extensively to *Thompson[9]* and quoted the *exact same phrase[10]* as the State. The Justices made an express finding "**based on our examination of the entire record**". The Justices of the Seventh obviously believe the facts in the record firmly establish ineffective assistance of counsel and said

[4] *Anthony v. State*, (this case), p9, Appellate Cause Number 07-13-00089-CR, February 12, 2015

[5] *Strickland v. Washington*, 466 U.S. 668 (1984)

[6] *Ex Parte Welborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990)

[7] **State's Brief on the Merits**, p ii (Index of Authorities).

[8] **State's Brief on the Merits**, p8 – <u>citing to</u> *Thompson v. State,* 9 SW3d 808 at 814 Tex.Crim.App. – 1999)

[9] *Thompson v. State,* 9 SW3d 808 (Tex.Crim.App. – 1999)

[10] *Anthony v. State*, (this case), p5, Appellate Cause Number 07-13-00089-CR, February 12, 2015

so in no uncertain terms.   So too should this Honorable Court.  The uncontroverted facts the Court of Appeals concentrate on include:

a) That the child victim's age was three years old [Clerk's Record (hereinafter CR), pp. 43 & 78].  The State's own Brief does not contest that the child was less than six years old[11].

b) That anyone convicted of Aggravated Sexual Assault of a Child with a child younger than six years of age is subject to a minimum term of imprisonment of 25 years[12],

c) Anyone convicted of Aggravated Sexual Assault of a Child with a child younger than six years of age is absolutely **not** eligible for either regular probation[13] or a deferred adjudication[14] probation.

d) No one at the plea, *including the Defense Counsel[15] and the Defendant[16],* knew these FACTS [Reporter's Record (hereinafter RR), v1, *the ENTIRE RECORD*].  The Opinion of the Appellate Court blasts "*every legally trained party involved,*

---

[11] **State's Brief on the Merits**, p6 – footnote 1.
[12] **Texas Penal Code**, Section 22.021 (f)
[13] **Texas Code of Criminal Procedure**, Article 42.12, Section 3(e)(1)
[14] **Texas Code of Criminal Procedure**, Article 42.12, Section 5(d)(3)(B)
[15] Who has the absolute duty to know all the relevant facts and law concerning the case.
[16] Who's plea CANNOT be voluntary if based on incorrect or complete information.

*the trial court, the prosecutor, and Appellant's own counsel*" for this failing[17].

The baseline question is **not** how the case was charged and whether or not the State could abandon explicit statutory language. This is largely irrelevant to both the Appellate Court's specific ruling and *the actual situation* in the 287th District Court in Baily County, Texas in January of 2009. The only important question before this Honorable Court (the one on which the Seventh Court of Appeals ruled) is whether Trial Counsel's level of information and preparation was sufficient. The question remains: Did the interaction with and admonishment of the Appellant "fell below the prevailing professional norms". This is **the** standard established since ***Strickland*** [18] (for Federal precedent) and ***Hernandez***[19] (for Texas law), and continues to remain the standard right now[20]

The State seeks to avoid, and lull this Honorable Court into ignoring, any analysis of the performance, knowledge, and performance

---

[17] ***Anthony v. State***, (this case), p7, Appellate Cause Number 07-13-00089-CR, February 12, 2015
[18] ***Strickland v. Washington***, 466 U.S. 668 at 690-92 (1984)
[19]***Hernandez v. State***, 726 S.W.2d 53 at 54-57 (Tex. Crim. App. 1986)
[20] ***Aguilar v. State***, p2, Tex: Court of Appeals, 7th Dist. 2015 –(April 2015)
https://scholar.google.com/scholar?scidkt=5676106144712423252&as_sdt=2&hl=en.

of Trial Counsel.  In doing so, they failed to effectively attack or even address the <u>actual</u> Court's ruling.

## APPELLANT'S ISSUES

1) The State's points ignore the Appellate Court's actual ruling and counter a ground the Appellate Court expressly did not address at this time.

2) Trial Counsel, as was found by the Appellate Court, was ineffective in the present case.

3) The original plea was void for statutory reasons and because it was neither voluntarily nor knowingly made.

4) Even should this Honorable Court agree with some portions of the State's argument, the State's requested relief is not proper in this matter.

## STATEMENT OF CONTESTED & SUPPLEMENTAL FACTS

**TEXAS RULES OF APPELLATE PROCEDURE**, Rule 38.2(B) exempts the responding party from the requirement of creating a Statement of Facts unless they are "dissatisfied" with the opponent's briefing of the 'Facts'. In the present case, the State's description of the facts is basically correct. However, the State's presentation does not include a few elements that this Honorable Court **must** have available and must consider to make a rational and informed ruling. Thus, the Appellant must provide a supplemental Statement of Facts to avoid the confusion of an incomplete view of the evidence and the record.

These are the specific areas in which this Honorable Court needs additional 'Facts':

1) At the time of the plea, the Appellant was seventeen years old [CR, p10],

2) At the time of the plea, the Appellant was indigent [CR, p11-13]

   *{Facts Regarding Competency Issues}*

3) Trial Counsel requested the Court conduct an inquiry into the competence of the Appellant [RR, v1, p4],

4) On December 3, 2008, the Trial Court considered "*the suggestion of incompetency to stand trial*" of the Defendant. The Trial Court,

at that time, performed an 'informal inquiry' into the incompetency of the Defendant [CR, p28].

5) The Trial Court specifically, following an informal inquiry, found and ruled that *"there is evidence to support a finding of incompetency and that the Defendant should be examined"* [CR, p28]. The Court entered an appropriate order to have the Appellant examined by an expert to assess his competency to proceed.

6) Even though ordered, this examination was never performed [RR, v1, p4]. No report regarding competency from any qualified expert exists anywhere in the record.

7) In spite of the stay of proceedings required by **Texas Code of Criminal Procedure**, Article 46B.004, the Trial Court proceeded to conduct a plea in this matter. Apparently, Trial Counsel believed that his being 'satisfied' that his client was competent [RR, v1, p4] avoided the clear requirements of the statutory framework.

8) There is no evidence of record that Trial Counsel was a qualified expert as defined by **Texas Code of Criminal Procedure**, Article 46B.022. Even if he somehow were; there is no evidence of record that Trial Counsel conducted an actual examination complying with **Texas Code of Criminal Procedure**, Article 46B.024. It is obvious that Trial Counsel did not create the report

required by **Texas Code of Criminal Procedure**, Article 46B.025 and 46b.026.

*{Supplemental Facts on the Age Controversy}*

9) During the plea, the Court was presented with the report from a presentence investigation which the Court consulted [RR, v1, p13] when it considered the punishment and the Judgment in this case.

10) The Appellant created a request for a complete Clerk's Record [CR, pp. 89] compliant with the **Texas Rules of Appellate Procedure**. The presentence investigation report is not, as of now, included in the Clerk's Record.

11) A presentence investigation report should be part of the appellate record. **Texas Rules of Appellate Procedure,** Rule 34.5(a)(2) requires, in criminal cases, the inclusion of *"any documents executed for the plea"*.

12) Appellate Counsel specifically requested the record to be completed by making this presentence investigation report available to this Honorable Court[21]. This motion was denied without explanation.

13) In a separate cause of action, the State obtained a protective order on behalf of the child victim. This was specifically done "as part of the plea bargain agreement" [RR, v1, pp. 14-15, 18-19, &

---

[21] Appellant's "**Motion to Supplement Official Record".**

20]. The hearing granting the protective order was conducted *within the guilty plea* in this case.

## SUMMARY OF THE ARGUMENT

a. The State's Brief totally fails to address the correct analysis of an ineffective assistance claim or ruling. The State instead counters grounds the Appellate Court expressly did not address at this time. In doing such, they have basically waived ANY attack on the Appellate Court's actual findings and decision.

b. Trial Counsel was actually ineffective in the present case. This is clear from the record, found by the Appellate Court, and neither briefed nor effectively contested by the State's "Brief on the Merits"

c. The original plea was void. The Defendant had no actual knowledge of the status of the law he was facing. Additionally, procedural default by the Trial Court rendered the entire original

plea void (or at least voidable and requiring a retrospective competency hearing)[22].

   d. The State's requested relief is simply not proper in this matter. It, like the entirety of the State's Brief on the Merits, ignores the breadth of the issues still pending in this matter (*IF ever this Honorable Court were to accept the State's arguments as relevant or telling*).

## ARGUMENT

Appellate Counsel believes that our response above shows the State's arguments to be an improper attack on undecided issues. However, at no point does Appellant wish the State, or this Honorable Court, to read anything herein as agreement with or stipulation to any of the State's issues. Thus, though they cannot be dispositive, the Appellant will briefly address each of the specific State contentions.

---

[22] As was the proposed resolve in the case of **Brown v. State** *(see below).*

## THE STATE'S ARGUMENTS

## DID THE COURT ERR BY HOLDING THAT APPELLANT WAS INELIGIBLE FOR DEFERRED: THE JUDGEMENT ENTRY.

The State invited the Court of Appeals to overturn the Trial Court as a finder of fact. They refused to do so. Now the State requests this Honorable Court to do the same. Their position appears to be that the actual facts known to the Trial Court don't matter and that the State's failure to preserve a complete record should somehow punish the Appellant.

Let's make one thing absolutely clear: the child involved in this case was under six at the time of the offense. Everyone involved in the case was aware of this FACT. The State's contention that the Judgment contained a "*clerical error, which can be corrected with an order nunc pro tunc*"[23] is disingenuous at best. If the Judge was wrong, the State would definitely have provided evidence to support that. The child was three. The State knew it at trial. The State knew it at the appeal. To claim this is a '*clerical error*' somehow wiped away by a nunc is simply

---

[23] **State's "Appellee's Brief"** to the Seventh Court of Appeals (07-13-000089) at 5.

ridiculous. To this Honorable Court, at least, the *"State does not contest that the child was under six years old"*[24]

If the Court knew this fact, as it obviously did, what methodology brought the information to the Court? The answer is clear from the record: (1) from the presentence investigation report and (2) from the proceedings and discussions of a protective order made part of the plea by the agreement of the parties.

While a protective order application or protective order may not provide the child's age[25], the discussions leading up to the granting of one clearly does.

More importantly, there was a presentence investigation report specifically created and considered in this matter [RR, v1, pp. 12-13]. The State's Appellate Attorneys contend that *"There is no evidence in the record to support the finding that the child was 3 years of age"*[26] and *"No evidence was presented at the plea proceeding that the child was*

[24] **State's "Brief on the Merits"**, p6 – Footnote 1
[25] As, in all candor to the Tribunal, the application and protective order in this case do not.
[26] **State's "Appellee's Brief"** to the Seventh Court of Appeals (07-13-000089) at 9.

*under six years old*"[27]  Of course the evidence was presented.  Does the State actually claim that the Trial Court simply made this up?

The evidence is, was, and continues to be <u>the presentence investigation report</u>[28].  Appellate Counsel has NEVER seen a PSI report in a sexual assault case, of any kind, which does not include the age or date of birth of the complainant.  This one obviously did and was specifically considered in the plea [RR, v1, pp. 12-13], punishment, and creation of sex offender conditions [CR, pp. 8 & 43].

The presentence investigation report is not currently part of the Appellate record.  This failing cannot be attributed to the Appellant or used to punish Appellant's argument.  No presentence investigation report is ever in the control of the Defense; they are always in the control and possession of the State and the Court.

The Appellant followed the required procedure for obtaining a clean and complete record.  The Appellant's request for the creation of the clerk's record specifically included all items "*identified in Rule 34.5(a)(I) through (II), Texas Rules of Appellate Procedure*" [CR, p89].

---

[27] [27] **State's "Brief on the Merits"**, pp. 5-6.
[28] If the State's contention is that the PSI report does NOT contain either the age or the date of birth of the child, Appellate Counsel would most fervently request they produce the report.

The presentence investigation report was a document executed for the plea[29] and thus should have been made part of the clerk's record. Appellate Counsel noticed this omission and specifically requested its production in a timely "Motion to Supplement Record". That the State and the Court failed to preserve a portion of the record cannot be used by the State to hide the facts known by the Judge, Prosecutor, and Defense Attorney (and specifically consulted at the hearing [RR, v1, pp. 12-13]).

The evidence showed the Judge the child's age. The Judge entered the child's age on the Judgment. This was not a 'sentence' that had to be pronounced separately from the bench[30]. The <u>sentence</u> was a "deferred adjudication of guilt" [CR, 43]. The age of the victim, as annotated on the Judgment (in the section addressing sex offender registration) is data relevant to the assessment of the proper type and level of sex offender restrictions, registration, and conditions which would be required by the Court[31]. The *fact* of the child's age is not an error. The *inclusion of the data* on the Judgment is not an error,

---

[29] **Texas Rules of Appellate Procedure**, Rule 34.5(a)(2).
[30] As the State contends in their **State's "Brief on the Merits"**, p6.
[31] In fact, the age of the victim is a data point required to be provided in all sex offender registrations. See **Texas Code of Criminal Procedure**, Article 62.051(c)(3).

certainly not a 'clerical error' subject to a nunc. The State's arguments to such effect are a red herring designed to draw attention away from the core of the Court of Appeals rationale. They observed, correctly, that "*every legally trained party involved*" missed the application of the law to the facts in this matter. For the State or the Trial Court to do so is troublesome. For Defense Counsel to be unaware is ineffective assistance of counsel.

## DID THE COURT ERR BY FINDING TRIAL COUNSEL INEFFECTIVE.

As we address this issue in detail throughout the Brief, our treatment here will be brief[32]. This State's "Issue" concentrates on whether the Court of Appeals can find Trial Counsel ineffective on the current status of the record and in light of the existing fact that the Appellant "actually received deferred adjudication". To this, there can only be one simple answer: Yes!

Appellate Counsel offers a couple of simple analogies.

---

[32] 'Brief' as defined by an Appellate Counsel who clearly cannot reign in the writing process to brevity.

Had the Appellant been charged with Driving While Intoxicated, would Trial Counsel have been ineffective for explaining, admonishing, and allowing the Appellant to plea to a Deferred Adjudication? The answer is, of course, yes. Even if the State is fine with it, the law does not allow for it. Even if the Court had granted it, the sentence would have been wrong. More importantly, the Defendant would not have a correct understanding of the law as it applies to his facts. The Appellant is entitled to Trial Counsel who knows all the relevant law and how, specifically, it applies to Appellant's case.

If an Appellant has two 'pen trips', he must be admonished to the possible consequences of these facts. This is required even the Appellant has not been enhanced and the State does not intend to enhance him. This is required even if the State's Attorney is unaware of the facts or the specific statutes. The Defense Attorney has a personal and unavoidable duty to have an independent knowledge of the facts **and the law** potentially impacting the client.

**Whether the sentence imposed in this matter was illegal or not[33] is irrelevant.**  The Fact that the Appellant was incompletely (and/or incorrectly) admonished shows that the Trial Counsel did not have the requisite level of knowledge or involvement.

The Appellate Court's opinion focuses on this issue:

"*… because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.[34]*"

It is absolutely unequivocal that the Appellant had **no idea** of the level of hurt the State could bring in this case.  It is unclear whether the Trial Counsel knew or not.  What is not in question is that no one, pre-plea, properly explained and admonished the law ***and potential consequences*** of the case to the Appellant.

---

[33] The issue upon which the State hangs it entire argument involving ineffective assistance.

[34] ***Anthony v. State***, (this case), p7, Appellate Cause Number 07-13-00089-CR, February 12, 2015 – citing to ***Ex Parte Marble***, 443 SW3d 129 at 131 (Tex.Crim.App – 2014) and ***McCarthy v. United States***, 394 U.S. 459 at 466 (1969).

The Court of Appeals found that "*Appellant was denied the effective assistance of counsel in violation of the Sixth Amendment*"[35]. This is the ***actual ruling*** of the Court of Appeals. The State's argument ignores the Appeals Court's legitimate concerns and does not conduct an ineffective assistance analysis. Thus it must wholly fail to convince.

## DID THE COURT ERR BY FINDING TRIAL COUNSEL INEFFECTIVE: 'THRESHHOLD ARGUMENTS'.

The State seems to be implying that the Court of Appeals must specifically write on each and every issue or their ruling can be set aside. As an Appellate Counsel for <u>defendants</u>, this contention is especially amusing. It is a source of continuing confusion, amazement, and consternation for the Defense as to what an Appellate Court chooses to include (or give weight to) in reasoning and opinions.

However, as this Honorable Court is surely aware, disagreeing with or even choosing not to write on an issue does NOT mean the

---

[35] ***Anthony v. State***, (this case), p9, Appellate Cause Number 07-13-00089-CR, February 12, 2015

issue is ignored. Unless an Appellate Court specifically decides to not address an issue[36], the Court implicitly rules. These rulings are obvious from their findings and Opinions. Here, the State complains of three matters they claim are "threshold" issues to a ruling:

1) The finding that the girl was three (discussed herein separately),

2) Forfeiture (by the Appellant) of 'any challenge" to the original plea, and finally

3) Estoppel.

None of these matters were ignored. They were briefed by the State in its "Appellee's Brief" and rejected. One specific issue even triggered a Concurring Opinion. The unavoidable conclusion is that the Court of Appeals disagreed with the State's contentions. The Justices ruled accordingly. The Appellate Court's reasoning and Opinion were correct to the issue they chose to base the finding on.

---

[36] As the Court of Appeals did on Appellant's Issues #1 & #2 in this matter.

## THE APPELLANT'S ARGUMENTS

### *Trial Counsel was ineffective in the present case.*

STANDARD

"*If the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel.*"

**McMann v. Richardson,** 397 U.S. 759, 771 (1970).

Every criminal defendant has the right to the effective assistance of counsel[37]. Counsel's assistance is ineffective if it falls below an objective standard of reasonableness and prejudices the defense[38]. *Strickland* provides a two-part test for determining whether counsel was ineffective: (1) deficient performance, and (2) prejudice[39].

An appropriate examination of the record includes counsel's representation, or lack thereof, during pretrial, the guilt-innocence stage of trial, and the punishment stage[40]. Even if a Defendant chooses to plead guilty, he is entitled to effective representation. A guilty plea

---

[37] **U.S. CONST**. amends. VI and XIV; **TEX. CONST**. art. I, §10; *Powell v. Alabama,* 287 U.S. 45 (1932)

[38] *Strickland v. Washington,* 466 U.S. 668 at 687 (1984); *Hernandez v. State,* 726 S.W.2d 53 at 55 (Tex. Crim. App. 1986)

[39] *Strickland,* at 687 (1984)

[40] *Moore v. State,* 983 S.W.2d 15 (Tex.App.— Houston [14th Dist.] 1998, no pet.).

is not voluntary if made as a result of ineffective assistance of counsel[41].
The defendant need not object in the trial court to counsel's ineffective
representation to preserve the issue for review[42].

The Appellant has the burden to prove ineffective assistance.
This burden requires proof of ineffectiveness by a preponderance of the
evidence[43].

## APPLICATION

The Court of Criminal Appeals has long noted that Trial Counsel
has an independent duty to know the facts and law, at minimum, in
defending the accused.

> "*It is evident that a criminal defense lawyer must have a firm
> command of the facts of the case as well as governing law before he
> can render reasonably effective assistance of counsel. ... It may not
> be argued that a given course of conduct was within the realm of
> trial strategy unless and until the trial attorney has conducted the*

---

[41] ***Ex parte Burns***, 601 S.W.2d 370 at 372 (Tex. Crim. App. 1980).
[42] ***Robinson v. State****,* 16 S.W.3d 808 (Tex. Crim. App. 2000).
[43] ***Perez v. State***, 310 S.W.3d 890 at 893 (Tex. Crim. App. 2010)

*necessary legal and factual investigation which would enable him to make an informed rational decision.*"[44]

The Courts place an increasingly heavy burden on Defense Counsel at the trial level to be aware and informative to a Defendant **before** any plea. For an analogy, Appellate Counsel directs the State and this Honorable Court to the ***Padilla*[45]** line of cases.

Defense Counsel can have no knowledge of or interest in immigration law. He may even have an active aversion to such a practice area. Trial Counsel can actually <u>tell</u> the client to go and consult with an actual immigration attorney. None of this relieves his burden one whit. If Trial Counsel represents someone who is not a United States citizen, they are required to find this out. Trial Counsel is required to warn the client as to the clear collateral consequences of **<u>any</u>** actions in a criminal case. Failure to do so is *per se* ineffective assistance of counsel. Even if the Defendant is admonished by the Court correctly, the duty remains with the Trial Counsel.

---

[44] ***Ex parte Welborn,*** 785 S.W.2d 391 (Tex. Crim. App. 1990) (internal citations omitted).
[45] ***Padilla v. Kentucky***, 130 S. Ct. 1473 - Supreme Court 2010

As in cases involving non-citizens, any sexual offense requires specific research and explanations to the client. Not only do the punishments change[46], but sex offender registration requirements change at almost every legislative session. Trial Counsel has to know of these changes and how they affect each client. Trial Counsel has the duty to explain the correct law to the Client and explain how the current law directly applies to his case.

---

## *BRIEF INTERMISSION*

To be fair, and leaven somewhat the language throughout the briefs, Appellate Counsel offers the following:

Having interviewed Counsel and the Trial Court in this matter, there was nothing nefarious happening in this matter. The actors simply did not realize the problem existed at the time of the plea.

One must remember that:

1) Bailey County is a small county with a very small number (both objectively and relatively) of offenses of this type[47], and

---

[46] As happened in this case.
[47] Thank goodness.

2) The statutory language at the heart of this problem was very new at the time of this proceeding. **Texas Penal Code**, Section 22.021 (f) became effective September 1, 2007.

There is no evidence, or even indication, that anyone involved actively tricked the Appellant or acted to flout the statute. The actors at the trial simply did not know or failed to realize the importance of this change in the law. While this is understandable; understanding does not relieve the absolute duty of Trial Counsel to know and explain the law as it actually exists.

Every time the law changes each Attorney practicing has to incorporate the sometimes baffling changes wrought by the legislature. That is the duty we accept when any Counsel chooses to accept a case. In this case, Trial Counsel failed to properly advise and admonish the client on current law. This failure, though understandable, made his representation ineffective.

In summation, the argument is both simple and unavoidable.

1) Trial Counsel has the unavoidable independent duty to know and investigate the law, the facts of the case, and to explain and admonish the Defendant on the interaction between the two.

2) Trial Counsel did not correctly admonish the Appellant and explain the law and the facts to the Appellant. This failure resulted in the Appellant having a less than full understanding of the law in relation to the facts.

3) A guilty plea is not truly voluntary unless the Defendant possesses an understanding of the law in relation to the facts.

4) Depriving the Appellant of a voluntary plea is the harm required by the second prong of *Strickland v. Washington.*

5) Trial Counsel's deficiencies, coupled with harm, require a reversal for ineffective assistance[48].

This Appellant's Brief, in the next section, provides additional clear evidence from the record of ineffective assistance by Trial

---

[48] Obviously, it is never that simple. We have provided evidence and argument throughout this brief to support the Court of Appeals ruling that this matter is absolutely the result of ineffective assistance. This simple summary is an attempt by Appellate Counsel to distill the arguments from the Seventh Court of Appeals and this brief into a concise bite-sized summary.

Counsel[49]. Again, failure to know the statutory framework and how it applies to the Appellant deprived the Appellant of important Constitutional protections. The full argument and support is included immediately below. This is simply another short summary to bring the issue to the fore.

1)	Trial Counsel has the unavoidable independent duty to know and investigate the law, the facts of the case and the Defendant,

2)	Trial Counsel became aware of competency issues with the Appellant,

3)	Trial Counsel sought and obtained an order (which ***found evidence of incompetence)*** for a competency examination,

4)	Trial Counsel attempted to waive the requirements of the statutory framework and took the matter to plea without complying with clear black letter law,

5)	Due process requires compliance with statutory procedures developed to ensure the competence of a criminal Defendant.

6)	Trial Counsel's actions thus deprived the Appellant of Constitutionally protected due process rights.

---

[49] On a completely separate issue.

7)      Deprivation of a substantial due process right is the harm

        required by the second prong of **Strickland v. Washington.**

8)      Trial Counsel's deficiencies (not knowing and/or complying with

        Article 46B of the **Texas Code of Criminal Procedure)**,

        coupled with harm (denial of Appellant's due process rights),

        require a reversal for ineffective assistance

Interestingly, it also (arguably) renders all the proceedings at question

in this matter (including this appeal) void as being conducted in

violation  of a mandatory statutory stay of "all proceedings"[50].  Ready

for that next section yet?


### *The original plea was void for statutory reasons and because it was neither voluntarily nor knowingly made.*


Any guilty plea must be entered into knowingly and voluntarily.

The discussion above reveals why this clearly was not done.  The

Opinion of the Court of Appeals provides an excellent discussion of the

issue[51].  We will avoid unnecessary repetition of that argument at this

---

[50] **Texas Code of Criminal Procedure**, Article 46B.004 (d)
[51] **Anthony v. State**, (this case), pp. 7-8, Appellate Cause Number 07-13-00089-CR, February 12, 2015

time. However, there remains the issue of a procedural default which illustrates both a failure of the Trial Counsel to know and comply with the statutory law **and** that the original plea in this matter was fundamentally flawed.

## FACTS

At the time of the plea, the Appellant was seventeen years old [CR, p10], indigent [CR, pp. 10-13] and extremely out of his depth. He had been on psychiatric medications for years. On December 3, 2008, the Trial Court considered *"the suggestion of incompetency to stand trial"* of the Defendant. The Trial Court heard and considered evidence while performing an informal inquiry into the incompetency of the Defendant. Following this informal inquiry the Trial Court specifically found that ***"there is evidence to support a finding of incompetency and that the Defendant should be examined"*** [CR, p28][52].

---

[52] It is worth mentioning at this point that Appellate Counsel specifically requested that the Record be supplemented with the transcript of this informal inquiry. That motion was denied by this Honorable Court. Thus, any Appellate Court must defer to the Trial Court (as the actual fact finder) on the sufficiency of the evidence supporting this finding.

Appellate Counsel is very aware that the Trial Court would not ever be forced to inquire *sua sponte* into the competency of the Defendant.  Further, if the Trial Court decided there was no evidence to support a finding of incompetency, no Court in this State would overturn that decision.  Appellate Counsel has scanned over fifty cases wherein the Defense tried that approach and utterly failed.  No matter how extreme the behavior (suicide attempts, outbursts in court, whatever…) the reviewing Courts defer to the Trial Court's decision or refusal to even hold an informal inquiry.  Here, the Judge **did** specifically find this evidence existed.  The Appellate deference afforded to the fact finder at the Trial Court now requires that we accept the Court's ruling as a given.

In this situation, very specific statutory black letter law takes control.  Failure to follow these very specific procedures rendered the plea *and all further proceedings* void.

These statutory provisions are both very clear and include the mandatory "shall" language.

"***If after an informal inquiry the court determines that evidence exists to support a finding of incompetency, the court***

*shall order an examination under Subchapter B to determine*

*whether the defendant is incompetent to stand trial in a*

*criminal case.*"[53]

and

*If the court determines there is evidence to support a*

*finding of incompetency, the court ... shall stay all other*

*proceedings in the case.*[54]

The Trial Court's Order for Examination ordered that the

Appellant be examined by a Dr. Robert Morgan[55] and that the required

reports be created and submitted to the Court [CR, p28]. A hearing was

scheduled for January 7, 2009 on the issue of the competency [CR, 29].

No report was apparently ever prepared as it is not present in the

record. No evidence exists of record that "*an examination under*

*Subchapter B to determine whether the defendant is incompetent to*

*stand trial"* was <u>ever</u> conducted. In fact, it is clear that the Appellant

was <u>not</u> so examined [RR, v1, p4].

---

[53] **Texas Code of Criminal Procedure**, Article 46B.005 (a)

[54] **Texas Code of Criminal Procedure**, Article 46B.004 (d)

[55] Presumably, a doctor qualified under the very specific qualification requirements found in 46B.022 of the **Texas Code of Criminal Procedure.**

Thus, by clear operation of statutory construction, all subsequent actions in this case[56] were conducted in violation of a mandatory stay of the proceedings.

On the day of the plea in this case, the following interchange occurred:

*THE COURT: And what says the defendant?*

*MR. McEACHERN: Defendant is present and ready, Your Honor, ready to proceed on a plea bargain.*

*I had previously filed a motion to have Mr. Anthony examined. I'm satisfied that he's competent.*

*I'm withdrawing that motion to have him examined.*

*THE COURT: All right. The Court did enter an order for examination back on December 3 of 2008, but that order was for Dr. Robert Morgan --*

*MR. McEACHERN: Yes, sir.*

*THE COURT: -- to examine him. And the matter was set for hearing before January 7th. Dr. Morgan has not examined him; is that correct?*

*MR. McEACHERN: That's correct, but I'm satisfied that my client is competent --*

---

[56] Including, respectfully, the proceedings of this appeal.

*THE COURT: All right.*

*MR. McEACHERN: -- and able to assist me in the trial of this matter.* [RR, v1, p4].

This conversation illustrates that 1) Trial Counsel did not have a clear grasp of the law concerning competence of the Defendant and 2) the Trial Court did not comply with the clear procedural requirements of Article 46B of the **Texas Code of Criminal Procedure.**

To be both unambiguous and brief:

a) Trial Counsel did not conduct an examination or prepare a report as required by 46B.025.

b) Trial Counsel is not a qualified expert as required by 46B.022,

c) Trial Counsel was not affiliated, in any way evidenced in the record, with Dr. Robert Morgan (the doctor Ordered to perform an examination),

d) Dr. Robert Morgan never examined the Appellant. Nor did he create the report as required by 46B.025 and the Court's order [CR, p28].

e) Article 46B.005 does not require that "***the court shall order an examination under Subchapter B to determine whether the***

*defendant is incompetent to stand trial in a criminal case*"

*unless some random Trial Counsel says the Defendant is OK*.

f) Either Trial Counsel was not knowledgeable as to the statutory requirements of Article 46B or chose to ignore them at the time of plea. Either way, the requirements of statutes were ignored.

## APPLICATION

This Honorable Court has already provided guidance and analysis on this issue. Just last year, the Court of Criminal Appeals decided *Brown v. State*[57]. While the facts in that case are much more extreme than those of the present Appellant, the legal analysis is directly on point. The unusual procedural history concluding *Brown* (the Appellant died, the appeal was permanently abated, and the March 19, 2014 opinion was withdrawn)[58] makes Appellate Counsel reticent to cite the opinion *directly* as precedent. However, as Judge Johnson is both

---

[57] *Brown v. State*, - Tex: Court of Criminal Appeals 2014 (March 19, 2014) {opinion withdrawn}

[58] *Brown v. State*, 439 SW 3d 929 - Tex: Court of Criminal Appeals 2014 (June 18, 2014).

better qualified and a better legal analyst, Counsel will shamelessly steal from the reasoning of this withdrawn opinion.

The prosecution and conviction of a defendant while he is legally incompetent to stand trial violates the Due Process Clause of the United States Constitution[59]. These protections are afforded to a criminal defendant even at a revocation hearing[60].

Due process also mandates state procedures that are adequate to assure that incompetent defendants are not put to trial[61]. To that end, the statutory scheme has codified the constitutional standard for competency to stand trial and has elaborately described the circumstances that require, and procedures for making, a determination of whether a defendant is competent to stand trial in the **Texas Code of Criminal Procedure**, Article 46B.

---

[59] ***McDaniel v. State***, 98 S.W.3d 704 at 709 (Tex. Crim. App. 2003) (citing ***Pate v. Robinson***, 383 U.S. 375 at 378 (1966))

[60] ***McDaniel***, at 710 and ***Lindsey v. State***, 310 S.W.3d 186 at 188 (Tex. App.-Amarillo 2010, no pet.). See also **Texas Code of Criminal** Procedure, Article. 42.07.

[61] ***Pate v. Robinson***, 383 U.S. 375 at 378 (1966).

Every Defendant has the right to be competent throughout his entire trial[62]. Once 'some evidence' of incompetence is found, the statutory requirements of Article 46B are triggered.

"*Some evidence*" is a very low bar; it requires a showing of only a quantity more than none or a scintilla[63]. If even this level of evidence exists then "*evidence exists to support a finding of incompetency*," and the statutory scheme <u>requires</u> the Trial Court to "stay all other proceedings in the case"[64] and conduct a formal competency trial[65].

Article 46B.005(c) does allow the parties to waive the necessity of a <u>trial</u> on the matter of incompetency if:

(1) *neither party's counsel requests a trial on the issue of incompetency*;

(2) *neither party's counsel opposes a finding of <u>incompetency</u>*; and

(3) *the court does not, on its own motion, determine that a trial is necessary to determine incompetency[66]*.

---

[62] *Rodriguez v. State*, 329 SW 3d 74 - Tex: Court of Appeals 2010 – **citing** . **Casey v. State**, 924 S.W.2d 946 at 949 (Tex.Crim.App. 1996).
[63] *Turner v. State*, 422 SW 3d 676 at 692 - Tex: Court of Criminal Appeals 2013
[64] **Texas Code of Criminal Procedure**, Article 46B.004 (d)
[65] *Turner*, at 693.
[66] **Texas Code of Criminal Procedure**, Article 46B.005 (c)

This allows the parties to agree on the incompetency of a Defendant if, **after** the required examination, no one opposes a finding of incompetence.

**There is <u>NO</u> statutory language which allows for waiver of an examination required by Article 46B.005(a).** There is no 'wiggle room' here. The Texas Legislature specifically includes 'shall' language when ordering the Courts to obtain these examinations. Until this examination is conducted and a report is created, nothing else can happen in the case. The Legislature requires the Courts to stay 'all proceedings' until this is done. The Supreme Court has held that the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial[67]. The issue of competence is of first importance: if the Appellant was not competent, the question of voluntariness is not reached.

In the present case, even if the Court of Appeals or this Honorable Court believed *Trial Counsel* was competent, the result must be the same. The competence of the Appellant is an open issue. The normal

---

[67] In ***Pate v. Robinson***, 383 US 375 - Supreme Court 1966

presumption that a Defendant is competent to proceed is set aside, by statutory construction, until an examination is conducted.  Procedural Due Process and the clear language of the **Texas Code of Criminal Procedure, Article** 46B <u>require</u> a stay of all proceedings until the constitutionally required safeguards are complied with.  This case must be returned to the Trial Court, where (should the State which to continue to pursue the matter) the Trial Judge would have to comply with 46B.005 and obtain a qualified evaluation of the competence of the Appellant.  This must happen before the case may proceed.

### *The State's requested relief is not proper in this matter.*

The State's Brief requests that this Honorable Court "*reverse the decision of the court of appeals*" and order specific language be stricken from the judgments in this case[68].  There is nothing in the record, the statutory appellate framework, or the existing precedent which can support this action.  It is important to note that the State's Brief on the Merits includes no cases which support this relief.

---

[68] **State's Brief on the Merits**, p12

This wholly improper remedy should not even be considered at this time. The Court of Appeals specifically chose not to address two of the three grounds raised on direct appeal. There is no existing case law that can support just ignoring existing, unresolved appellate grounds. Should this Honorable Court rule that Trial Counsel was not ineffective, a proper resolve would be to remand to the Court of Appeals to address and resolve the remaining issues of the Appellant.

Further, this Honorable Court now has before it a clear violation of the Appellant's procedural due process rights in the handling of the Appellant' competence. It would be entirely proper for this Honorable Court to recognize this failing and abate *all further proceedings*[69] until such time as the Trial Court complies with the clear statutory framework provided in **Texas Code of Criminal Procedure**, Article 46B.

The State's dismissive statement that "*the ineffective assistance issue could be raised on habeas corpus*"[70] ignores the fundamental fact that the Appellant won '*the ineffective assistance issue*'. Why should the weakest and least prepared individual bear the burden for the

---

[69] **As required by Texas Code of Criminal Procedure**, Article 46B.004 (d)
[70] **State's Brief on the Merits**, p11

multiple failures of *'every legally trained party'* evident in these proceedings?  Why should the Appellant be punished by discounting raised claims, because his <u>winning</u> on one issue made the others unneeded?  This suggestion by the State that this Honorable Court rob the Appellant of access to the appellate process is simply offensive.

The Appellant's success in proving ineffective assistance does not negate the other significant failings in this case.  To try to shift the burden of proceeding to a young incarcerated indigent, of legally questionable competence, shows the level of disconnect the State's argument embraces.

There is absolutely nothing before this Honorable Court which should reassure.   There is no evidence that the Appellant was effectively represented.  There is no evidence that the proceedings on January 14, 2009 were legally correct in any way.  To grant the State's prayer and simply sweep away the various and apparent errors of these proceedings would, quite simply, be a miscarriage of justice.  The Seventh Court of Appeals got this one right.  If you don't agree those Justices got it right *for the right reason* the only correct resolve is a

remand (to *either* the Appellate Court or the original Trial Court) to address the totality of the remaining issues.

## CONCLUSION

The Seventh Court of Appeals clearly laid out the failures of "*every legally trained party involved the trial court, the prosecutor, and Appellant's own counsel*"[71]. The State's Brief on the Merits fails to refute these failings. The State fails to provide any ineffective analysis *at all.*

The State instead provides a fairly compelling argument in support of the ground the Court of Appeals specifically chose to not address. The State's approach is basically asking you to issue an advisory opinion and reverse the Seventh Court of Appeals on unaddressed grounds.

On the subject of unaddressed issues, this Honorable Court now has clear evidence before it of procedural default and due process violations. These would be best addressed in a remand to the Trial Court to force compliance. However, the issue must clearly be included

---

[71] *Anthony v. State*, (this case), p7, Appellate Cause Number 07-13-00089-CR, February 12, 2015

in any analysis of the voluntariness of the plea. Whatever the proper resolve, the utter failure of the Trial Counsel to address or avoid these issues is further clear proof of the Trial Counsel's ineffective performance.

Finally, the Appellant has shown why the State's requested remedy is wholly improper. It is obvious to Appellate Counsel, as it was to the Justices of the Seventh Court of Appeals, that Trial Counsel's representation was ineffective from the record alone. However, Appellate Counsel has been sure before and still overruled. If that should occur in this proceeding, the Appellant still has a battle to fight on the existing issues. This is especially true on the existing issue of that his plea was not knowingly and voluntarily made (for the many reasons stated above). Nothing in this case, including the State's brief, supports their desired relief.

## PRAYER

Appellant prays this Honorable Court sustain these arguments, deny the remedy requested by the State, and sustain the decision of the Seventh Court of Appeals in this matter.

In the alternative, the Appellant prays this matter be remanded to the Trial Court to allow for a proper resolution of the open question of the Appellant's competency. Appellant requests that he be evaluated, as ordered, by Dr. Morgan or any *legally qualified* expert. Appellant requests that the required report be created following such an examination and that report be made part of the record. The Appellant specifically does not *at this time* waive a trial on the issue of competence. Appellant prays that all proceedings following the entry of the Court's "Order for Examination" of December 3, 2008 be deemed void as in violation of a statutorily mandated stay. Appellant prays that he be returned to his position prior to any plea in the matter.

In a final alternative, the Appellant prays this matter be remanded to the Seventh Court of Appeals for resolution of any and all remaining Appellate grounds supported by the record. The Appellant further requests any clarifying instructions and rulings this Honorable Court deems necessary.

*Respectfully Submitted,*

*/s/ Troy Bollinger*

**TROY BOLLINGER**

**State Bar No. 24025819**
**600 Ash Street**
**Plainview, Texas 79072**
**Tel.: (806) 293-2618**
**Fax: (806) 293-8802**
**troy@laneybollinger.com**
**Attorney for Appellant**

**CERTIFICATE OF SERVICE**

Pursuant to **Tex. R. App. Pro. R. 9.5(a) & (e) and 68.11**, I certify that on or before August 10, 2015, Appellate Counsel served a copy of the attached document to the District Attorney's Office for Bailey County and the State's Assistant Prosecuting Attorney, and mailed a copy to Appellant, John Dennis Clayton Anthony.

*/s/ Troy Bollinger  .*

*TROY BOLLINGER*
*Counsel for the Appellant*

**CERTIFICATE OF COMPLIANCE**

*I, Troy Bollinger, attorney for Appellant, certify that this document was generated by a computer using Microsoft Word which indicates that the word count of this document is 8,952 (excluding Appendix) words as required by Tex. R. App. P. 9.4 (i).*

*/s/ Troy Bollinger .*

*TROY BOLLINGER*
*Counsel for the Appellant*

# *<u>Appendix</u>*

**Opinion from the Court of Appeals**

**Concurring Opinion from the Court of Appeals**

***<u>Brown v. State</u>* (recalled opinion)**

***<u>Aguilar v. State</u>***

**First Judgment**

**Order for Competency Examination**



# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00089-CR
_____

JOHN DENNIS CLAYTON ANTHONY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 2557; Honorable Gordon H. Green, Presiding

February 12, 2015

OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

On January 14, 2009, Appellant, John Dennis Clayton Anthony, entered a plea of guilty to the offense of aggravated sexual assault[1] in exchange for a recommendation of deferred adjudication community supervision. At that time, the trial court accepted the plea agreement and, pursuant to the terms thereof, placed Appellant on deferred

_____
[1] See TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West Supp. 2014).

adjudication community supervision for a term of eight years. The *Order of Deferred Adjudication* found the age of the victim to be three years at the time of the offense.

On February 15, 2013, the State moved to proceed with an adjudication of guilt alleging Appellant had violated the terms and conditions of his community supervision. At a hearing on the State's motion, Appellant entered pleas of true, and after hearing testimony, the trial court adjudicated him guilty of the offense charged and assessed punishment at confinement for life. The *Judgment* again found the age of the victim, at the time of the offense, to be three years.

Appellant now seeks to reverse the trial court's decisions to revoke his deferred adjudication community supervision, adjudicate him guilty of the offense of aggravated sexual assault and assess the maximum period of confinement. By three issues, Appellant contends (1) he was denied both due process and equal protection because his plea was neither knowingly nor voluntarily made, (2) the trial court abused its discretion when it entered an order in contravention of article 42.12, section 5(d)(3)(B) of the Texas Code of Criminal Procedure,[2] and (3) he was denied effective assistance of counsel. The State asserts the deferred adjudication order was not illegal or, in the alternative, Appellant waived any error by failing to timely object and appeal the order of deferred adjudication. The State also contends Appellant was not denied effective assistance of counsel. We reverse and remand.

BACKGROUND

The indictment in this case charges Appellant with the offense of aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West Supp. 2014). The

---

[2] *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(d)(3)(B) (West Supp. 2014).

2

minimum term of imprisonment for an offense under section 22.021 is twenty-five years if the victim of the offense is younger than six years of age at the time the offense is committed. *See* TEX. PENAL CODE ANN. § 22.021(f)(1) (West Supp. 2014). In this case, the victim was younger than six years of age at the time the offense was committed.

In 2007, the Legislature amended article 42.12 of the Texas Code of Criminal Procedure to provide that deferred adjudication community supervision is not available for defendants charged with certain crimes, including those punishable under section 22.021(f) of the Texas Penal Code.[3] *See* Act of May 18, 2007, 80th Leg., R.S., ch. 593, § 1.07, 2007 Tex. Gen. Laws 1120, 1123-24 (codified at TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(d)(3)(B) (West Supp. 2014)). The statute took effect on September 1, 2007, and applies to offenses committed after that date. 2007 Tex. Gen. Laws at 1148. Because the offense charged in this case is alleged to have been committed on September 11, 2008, it was punishable under subsection (f)(1) of section 22.021. *See* TEX. PENAL CODE ANN. § 22.021(f)(1) (West Supp. 2014).

The State concedes in its brief "that Appellant was placed on deferred adjudication community supervision for a period of eight years, which term of community supervision falls outside the applicable statutory range of punishment for Aggravated Sexual Assault, child younger than 6 years of age." Because Appellant was charged with an offense punishable under section 22.021(f) and because the minimum term of imprisonment exceeded ten years, the trial court was never authorized to place

---

[3] *Cf.* TEX. CODE CRIM. PROC. ANN. art 42.12, § 5(a) (West Supp. 2014) (providing that, except as provided by subsection (d), a defendant charged with an offense under section 22.021 of the Penal Code may be placed on deferred adjudication community supervision, regardless of the age of the victim, "if the judge makes a finding in open court that placing the defendant on community supervision is in the best interest of the victim"). Not only was no such finding made in this case, section 5(a) expressly states that it is inapplicable where section 5(d) provides otherwise.

Appellant on deferred adjudication community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 §§ 3(e)(1) and 5(d)(3)(B) (West Supp. 2014).

Appellant contends his original plea was involuntary because it was based, in part, on the representation that he was eligible for deferred adjudication community supervision and, but for that representation, he would not have given up his right to a jury trial and entered a plea of guilty. He further contends that he was prejudiced by the ineffective assistance of his counsel in failing to correctly advise him. Because we find the ineffective assistance of counsel claim to be dispositive, we will address that issue first and pretermit the remaining issues.

INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution guarantees an accused the assistance of counsel to prepare a defense. *See* U.S. CONST. amend. VI. The Sixth Amendment right to counsel has been interpreted as "the right to effective assistance of counsel." *Robinson v. State*, 16 S.W.3d 808, 812 (Tex. Crim. App. 2000) (citing *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). We examine an ineffective assistance of counsel claim by the two-pronged standard enunciated in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984). *See Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas).

Under *Strickland,* Appellant has the burden of establishing by a preponderance of the evidence that (1) trial counsel's performance was deficient in that it fell below the prevailing professional norms, and (2) the deficiency prejudiced the defendant; that is,

4

but for the deficiency, there is a "reasonable probability" that the outcome of the proceedings would have been different.  *See Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005); *Thompson v. State,* 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Strickland,* 466 U.S. at 694; *Thompson,* 9 S.W.3d at 812.  The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S. Ct. 366, 68 L. Ed. 2d 203 (1985).  An appellant has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Thompson,* 9 S.W.3d at 813.

DEFICIENT PERFORMANCE

In conducting a deficient performance review, counsel's conduct is to be viewed with great deference, *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005), bearing in mind that there is a "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  *Thompson,* 9 S.W.3d at 813.  Consequently, to overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record.  *Id.* at 813-14.

Here, counsel provided Appellant incorrect legal advice concerning the range of punishment applicable to the offense charged.  Counsel's incorrect legal advice was reinforced and compounded by the acquiescence of both the prosecutor and the trial judge.  Not knowing the law applicable to the offense charged is competence below the professional norm.  Accordingly, because obtaining a guilty plea in exchange for a recommendation that was not legally available deprives the accused of the opportunity

5

of making an intelligent choice among legally available courses of action, we find the record clearly establishes that the performance of Appellant's trial counsel was deficient in that it fell below the prevailing professional norms. Based on our examination of the entire record, we hold Appellant has established the first prong of the *Strickland* test by a preponderance of the evidence. We now turn to the question of whether Appellant was prejudiced by counsel's deficient performance.

PREJUDICE

When examining ineffective assistance of counsel in the context of a challenge to the voluntariness of a plea of guilty based on the incorrect advice of counsel, to satisfy the "prejudice" prong of the *Strickland* test, an appellant must show that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Hill*, 474 U.S. at 59. Here, we need look no further than the negotiated plea bargain itself to find prejudice. In a negotiated plea bargain that contemplates a particular offense of conviction and punishment to be imposed, the accused expressly gives up a whole host of constitutional and procedural rights, including the right to a jury trial, the right of confrontation of witnesses, the right to require the State to prove the charges being made beyond a reasonable doubt and the right to remain silent. In such situations, confidence in the outcome of the contemplated plea bargain mandates that an accused be able to reasonably rely on the competent advice of a legally trained professional. Defense counsel's mistaken belief that Appellant was eligible for deferred adjudication community supervision, compounded by the misguided consensus of the prosecutor and the trial court, resulted in an erroneous

6

understanding of the law applicable to his case, which reasonably induced Appellant into entering a plea of guilty.

In that regard, it is well established that a guilty plea must be entered into knowingly and voluntarily. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(b); *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969); *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014). "Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *Ex parte Mable,* 443 S.W.3d at 131 (quoting *McCarthy*, 394 U.S. at 466). The applicable standard of review is whether the plea is a voluntary and intelligent choice among the alternative courses of action open to the accused. *Id.*

In his attempt to understand the law and make an intelligent choice as to whether to plead guilty and forego a jury trial, Appellant should have been able to confidently rely upon the advice of his legal counsel regarding both the range of punishment for the offense charged and his eligibility for community supervision. In other words, an intelligent choice among alternative courses of action must be voluntary and "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill,* 474 U.S. at 56 (quoting *McMann*, 397 U.S. at 771).

In this case, every legally trained party involved, the trial court, the prosecutor and Appellant's own counsel, incorrectly believed Appellant was eligible for deferred adjudication community supervision. The voluntariness of Appellant's plea is crucial to this case, and Appellant cannot be said to have entered his plea knowingly and

7

intelligently if he did so while operating under a misunderstanding of the law applicable to such a critical phase of his case.

The right to competent legal advice and the effective assistance of counsel involved here speaks to the very integrity of plea bargain practice and its role in the judicial sentencing process. The relinquishment of important legal rights in reliance upon incorrect legal advice, confirmed and acquiesced in by the trial court, concerning the range of punishment and impacting an accused's right to voluntarily and intelligently exercise sentencing choices, undermines both the proper functioning of our adjudicatory process and public confidence in the integrity of such proceedings.

Nothing in the record suggests the quality of evidence available to the State to support its indictment. To the contrary, the record reflects that the victim would have been a child of tender years with limited ability to testify as to the facts and circumstances surrounding the offense. If Appellant would have known he was facing a minimum period of twenty-five years confinement instead of deferred adjudication community supervision, it is reasonable to conclude he would not have stipulated to the evidence against him and entered a plea of guilty without the agreed upon recommendation as to punishment. By inducing him to enter a plea of guilty through the false promise of community supervision, there is a reasonable probability Appellant waived valuable rights and entered a plea of guilty. Therefore, but for counsel's errors, there is also a reasonable probability the result of the proceeding would have been different.[4] Under *Strickland*, that is sufficient to undermine confidence in the outcome of

---

[4] Because counsel's advice was incorrect and Appellant was ineligible for community supervision, assuming the trial court applied the law correctly, there is not only a reasonable probability that the result of the proceeding would have been different, there is an absolute certainty.

8

the proceeding.  Accordingly, Appellant has satisfied the second prong of the *Strickland* test for establishing ineffective assistance of counsel.

Having found Appellant was denied the effective assistance of counsel in violation of the Sixth Amendment, we sustain issue three and reverse the judgment of the trial court.  Our disposition of issue three makes it unnecessary for us to address Appellant's first and second issues.  *See* TEX. R. APP. P. 47.1.

CONCLUSION

We reverse the judgment of the trial court and order that Appellant be remanded to the Bailey County Sheriff to answer the charge against him.  We further order that he be allowed to withdraw his plea of guilty and that he be returned to his position prior to that plea.[5]   The trial court shall issue any necessary bench warrant within 10 days after the mandate of this Court issues.

Patrick A. Pirtle
Justice

Publish.

---

[5] It should be noted that by being restored to the position he held prior to his original plea, Appellant is still facing a sentence of imprisonment in the Texas Department of Corrections for any term of not less than 25 years or more than 99 years or life, and a fine not to exceed $10,000.  *See* TEX. PENAL CODE ANN. §§ 12.32 & 22.021(f)(1) (West 2011 & West Supp. 2014).

9


No. 07-13-00089-CR

JOHN DENNIS CLAYTON ANTHONY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 2557, Honorable Gordon H. Green, Presiding

February 12, 2015

## CONCURRING OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

I concur in the result and the discussion about counsel's ineffectiveness at the initial plea hearing. Yet, I am also concerned about the application of *Wiley v. State*, 410 S.W.3d 313, 319 (Tex. Crim. App. 2013) (reaffirming prior authority holding that "an appellant will not be permitted to raise on appeal from the revocation of his community supervision any claim that he could have brought on an appeal from the original imposition of that community supervision") to the circumstances before us. My concern is avoided though when considering this court's opinion in *Neugebauer v. State*, 266

S.W.3d 137 (Tex. App.—Amarillo 2008, no pet.). There we held that "[i]f the original judgment imposing community supervision is void, then the trial court has no authority to revoke that community supervision, since, with no judgment imposing community supervision, there is nothing to revoke." *Id.* at 139.

I analogize the situation here to one wherein the sentence is not authorized by law. Should such a sentence be levied, it is void or illegal. *Ex parte Pena*, 71 S.W.3d 336 n.2 (Tex. Crim. App. 2002). While this is really not a case where the sentence was illegal (since a sentence requires a conviction and deferring the adjudication is not a conviction and, therefore, a sentence), the course of action undertaken by the trial court was prohibited by statute. Thus, it was void. Being void, it never occurred.

So, as we observed in *Neugebauer*, since the original judgment deferring the adjudication of appellant's guilt and placing him on community supervision was void, the trial court had nothing before it to revoke. Thus, its judgment should be reversed, and the parties should begin anew as if the defendant had never been placed on deferred adjudication or agreed to a plea bargain that the law barred the trial court from enforcing.

Brian Quinn
Chief Justice

Publish.

2

**DAVID EARL BROWN, Appellant,**

**v.**

**THE STATE OF TEXAS.**

No. PD-1723-12.

**Court of Criminal Appeals of Texas.**

Delivered: March 19, 2014.

# OPINION

JOHNSON, J., delivered the opinion of the Court in which MEYERS, WOMACK, COCHRAN, and ALCALÁ, JJ., joined. COCHRAN, J., filed a concurring opinion in which MEYERS, and ALCALÁ, JJ., joined. PRICE, J., filed a dissenting opinion. KEASLER, J., filed a dissenting opinion in which KELLER, P.J., and HERVEY, J., joined.

Appellant was on trial for murder. In the early morning hours of what would have been the final day of trial in the guilt phase, appellant sustained a gunshot wound to the head. After a one-day recess, the trial judge ruled that appellant's absence from trial was voluntary because there was evidence that the injury may have been self-inflicted. The court conducted the remainder of the guilt trial and the entire punishment trial in appellant's absence. Appellant appealed the trial court's refusal to hold a formal hearing to determine whether he was incompetent to stand trial after sustaining the gunshot wound. The appellate court held that appellant should have been granted a competence hearing before the jury made its guilt determination and remanded the cause for a new trial.[1] This decision remained unchanged after rehearing.[2] We granted the state's petition for discretionary review on four grounds.[3] Because we find that the trial court did not follow relevant procedures set out in Texas statutes and Supreme Court precedent, we remand to that court for a retrospective hearing to determine whether appellant was incompetent at any or all of the guilt and punishment phases and sentencing.

# I. Facts

Appellant was charged with the murder of Whitt Bruney, his neighbor. It was undisputed that appellant shot and killed Bruney, but appellant claimed self-defense. On March 9, 2010, during the guilt phase, the court adjourned for the day so that the defense could call its final witnesses the next morning. Appellant had already testified and been cross-examined.

When the trial convened on the morning of appellant's suicide attempt, the trial court stated that its "understanding of the law is" that appellant had voluntarily absented himself from trial by attempting to commit suicide, and it then recessed for the day.

The next day, March 11, the court agreed to hear testimony on defense motions for a continuance and a competence hearing. Defense counsel filed a motion for continuance based on both involuntary absence (Art. 33.03)[4] and incompetence (Arts. 46B.003-005). Both the state and appellant called witnesses.

Officer Weller, the first police officer to respond, arrived at the scene after paramedics had taken appellant to the hospital. He testified that, at approximately 4:45 a.m. on the morning of March 10, John Overman, appellant's neighbor, heard a gunshot but did not investigate. Half an hour later, Overman went out for a walk and found appellant on the ground, bleeding from his face. Police and EMS were called, but Officer Weller did not arrive until after appellant had been taken to a hospital, there were no witnesses to the shooting, and there was no way to know who shot appellant, but that, in his opinion, the gunshot wound was self-inflicted.[5] He had spoken with appellant's roommate, Gene Eignus, who had

stated that appellant "had been despondent over the way the Court proceedings were going."

Officer Leos, the second officer on the scene, had gone to the hospital and had spoken with a doctor there who had described appellant's injuries to Officer Leos: a bullet went through appellant's mouth and one eye and lodged in appellant's brain.[6] The doctor said that appellant would survive but that he could not say if the wound was self-inflicted. Officer Leos also testified that appellant's hands were not tested for gunshot residue and no fingerprints were lifted from the gun.

Appellant's psychiatrist, Dr. Root, testified[7] that he had been treating appellant for depression arising from the killing of Whitt Bruney. Dr. Root also testified that, given what he had been told about the injuries that appellant had sustained, it was unlikely that he was able to assist his attorneys during the remainder of the trial. Defense counsel stated for the record that appellant's injuries resulted from a bullet that went through appellant's mouth and lodged in the left frontal lobe,[8] that there had been one surgery performed on appellant, and that bullet fragments remained in appellant's brain. The state did not object or contradict defense counsel's statements. Dr. Root testified that the left side of the brain performs interpretation of facts and controls language, speech, and memory of language and speech. In addition, injuries caused by a bullet track are exacerbated by damage from the shock wave that radiates from the bullet track. He opined that the degree of recovery from such an injury is highly individual and agreed with defense counsel that recovery sufficient to regain competence was possible, but Dr. Root thought it unlikely. He also said that, if appellant had, in fact, tried to commit suicide, the attempt would "suggest" mental illness.

In an attempt to show that appellant's injuries may not have been self-inflicted, defense counsel's motion for continuance argued to the trial court that there were no witnesses, appellant had received death threats up to the day before he suffered the gunshot wound, and the gun was not recognized as being owned by appellant. Defense counsel also argued that a competency evaluation was required because appellant was unable to assist in his own defense, citing Articles 46B.003, 46B.004, and 46B.005. Counsel stated that he was supposed to have had at least one more meeting with appellant to discuss their rebuttal and punishment witnesses and to discuss their strategy for the punishment trial, if it became necessary. Appellant's injuries prevented that meeting and prevented him from being present and able to assist his attorneys at the remainder of the guilt phase and the entirety of the punishment phase.

After hearing the testimony about appellant's injuries and current status, the trial court found that appellant had voluntarily absented himself from trial and that he was competent, based on the trial judge's understanding of the law and appellant's prior testimony. It denied the defense motion for a continuance and a competence evaluation and then continued the guilt phase with the closing arguments of the parties. After appellant was found guilty, the trial court began the punishment phase. The record reflects that appellant was not present. Witnesses for both the state and appellant testified. Appellant's roommate testified that appellant was in Ben Taub Hospital and on life support. The jury assessed a sentence of ten years' imprisonment.

One month later, on April 15, 2010, the trial court held the sentencing hearing. Appellant was present.[9] Defense counsel again asked for a continuance so that appellant could be evaluated for competence, noting that, if at any time during trial, the defendant's competence to stand trial is brought into question, there must be an inquiry into whether there is some evidence from any source that would support a finding that the defendant may be incompetent. Art. 46B.004(c).[10] Counsel argued that, even though appellant had recovered sufficiently to be present in court, his lawyers did not think that appellant was able "to understand the nature of the proceedings against him and unable. . . to consult with" his lawyers. The trial court denied the motion and proceeded to sentencing. During that hearing, the following colloquy occurred between appellant and the trial court.

> THE COURT: Okay. Mr. Brown, will you please stand.
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: All right. Mr. Brown, at this time in accordance with the verdict of the jury having assessed your punishment at ten years, it's my duty at this time to follow through with that. So, at this time I am-a jury

having found you guilty of the offense of murder, I am assessing punishment at ten years in the Institutional Division of the Texas Department of Corrections. I'll give you credit for your back time. Good luck to you, sir.

THE DEFENDANT: Thank you, ma'am.

The record thus reflects that appellant was able to stand and to respond verbally to requests from the trial court. As the court of appeals noted, there was no inquiry into whether appellant could assist his attorneys and had a rational as well as factual understanding of the proceedings. Pursuant to the jury's verdict on punishment, the trial court sentenced appellant to ten years' imprisonment.

## II. Court of Appeals's Opinion

In its original opinion,[11] the court of appeals summarized the record testimony about appellant's gunshot wound and then addressed appellant's claim that the trial court abused its discretion when it denied the requested continuance and found that appellant had voluntarily absented himself from trial. The court of appeals held that, because appellant was in the intensive care unit of a hospital at the time of the hearing, all the evidence from the informal hearing held by the trial court "supported a finding that [appellant] did not have sufficient present ability to consult with his lawyer as a result of the gunshot wound." _Brown,_ 393 S.W.3d at 313. "At that point, the trial court was required to stay all proceedings in the case pending a competency examination and incompetency trial." _Id._ at 313. The court of appeals also noted that appellant was present at the sentencing hearing but that "[n]othing in that record indicates anyone attempted to communicate with Brown or that he had a rational as well as factual understanding of the proceedings." _Id._ at 312. "Because the issue of [appellant's] incompetence was raised before the jury determined his guilt and the trial court erred in finding him competent," the court of appeals reversed the trial court's judgment and remanded the case for a new trial. _Brown,_ 393 S.W.3d at 315.

On the state's motion for rehearing, which argued that a person who voluntarily absents himself from a trial is not entitled to a competency evaluation, the court of appeals reaffirmed its initial holding[12] that appellant "did not voluntarily absent himself from trial because under article 46B.005 the trial court was required to stay the proceedings and conduct a formal competence examination." _Id._ at 315-16 (op. on reh'g). The court of appeals noted that the state supported its position with cases decided under a now-amended law and that the only case cited by the state that applied current law was an unpublished court-of-appeals case in which the defendant attempted suicide by overdosing on pills and defense counsel did not object to continuing the punishment phase. _Grizzard v. State,_ No. 01-06-00930-CR, 2008 WL 2611865 (Tex. App.-Houston [1st Dist.] July 3, 2008, no pet.) (mem. op., not designated for publication). The court of appeals noted that a head injury produces injuries that are unlike the consequences of overdosing on medication. _Brown_ at 316 (op. on reh'g). The existence of more than a scintilla of evidence suggesting appellant's incompetence—he was on life support in a Houston hospital—should have triggered a competence hearing, rather than a voluntary-absence determination. _Id._ at 317. The appellate court also conducted a harm analysis and, without determining whether the error was structural, held that appellant had suffered harm. _Id._

## III. Analysis

In its first ground for review, the state asks whether the trial court abused its discretion in concluding that appellant's absence from trial was voluntary.[13] In its second and third grounds for review, which the state argues together, the state asks, "Is a defendant who voluntarily renders himself absent from trial entitled to a competency evaluation?" and "Is a trial court required to immediately stay proceedings for a competency evaluation of an unconscious defendant, or does the trial court have the discretion to order the competency evaluation at any time before sentence is pronounced?" In its fourth ground for review, the state asks, "If a trial court fails to stay proceedings and order a competency evaluation, is abatement for a retrospective competency evaluation the proper remedy or should an appellate court conduct a harm analysis?"

"A defendant has the right to be competent throughout his or her entire trial." *Garay v. State,* No. 01-11-00595-CR, 2012 WL 2159296, at *2 (Tex. App.-Houston [1st Dist.] June 14, 2012) (mem. op., not designated for publication) (citing *Casey v. State,* 924 S.W.2d 946, 949 (Tex. Crim. App. 1996)). The "entire trial" includes the punishment stage. *See Illinois v. Allen,* 397 U.S. 337, 338 (1970) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial."); *Adeleye v. State,* Nos. 01-10-00881-CR, 01-10-00882-CR, 2013 WL 485766, at *6 (Tex. App.-Houston [1st Dist.] Feb. 07, 2013) (mem. op., not designated for publication) (reviewing trial court's finding that appellant was competent at the punishment stage); *Gonzales v. State,* Nos. 05-08-00524-CR, 05-08-00525-CR, 2009 WL 242531, at *3-*4 (Tex. App.-Dallas Feb. 03, 2009, pet. ref'd) (mem. op., not designated for publication) (reviewing trial court's competence determination after informal inquiry at punishment stage); *Baldwin v. State,* 227 S.W.3d 251, 254-55 (Tex. App.-San Antonio 2007) (reviewing appellant's claim of incompetence at the punishment stage). Article 46B codifies this constitutional due-process right: A defendant is incompetent if he lacks the ability to reasonably communicate with his attorney or if he lacks a rational and factual understanding of the proceedings against him. Art. 46B.003(a); *see also Ex parte LaHood,* 401 S.W.3d 45, 56 (Tex. Crim. App. 2013) ("Although an attempted suicide is disturbing, it does not necessarily prove that a person lost the ability to meaningfully consult with his attorney or that he lacked a rational and factual understanding of the charged offense and trial proceedings.").

Pursuant to Texas statutes, either party may suggest that a defendant might be incompetent to stand trial, or the trial court may raise the issue *sua sponte.* Art. 46B.004(a). Once a defendant's incompetence has been suggested, the process for making that evaluation occurs in two steps. First, the trial court must hold an informal inquiry to determine "whether there is some evidence from any source" supporting the defendant's incompetence. Art. 46B.004(c). "Some evidence" is a low bar; it requires a showing of only a quantity more than none or a scintilla. *Turner v. State,* No. AP-76,580, 2013 WL 5808250, at *11 (Tex. Crim. App. Oct. 30, 2013) (quoting *Ex parte LaHood,* 401 S.W.3d at 52-53). If the informal inquiry yields a determination by the court that there is evidence to support the defendant's incompetence, the court must empanel a jury[14] and conduct a trial to determine whether the defendant is competent. *See* Arts. **46B.004(d**), 46B.005(d). In general, once the trial court conducts an informal inquiry and determines that there is at least a scintilla of evidence that supports holding a competence trial, the court must "stay all other proceedings in the case" pending a jury finding on competence. Art. **46B.004(d**). However, when the competence issue is not raised until after the trial on the merits has begun, the trial court has the discretion to postpone the competence evaluation until any time before sentencing, but the trial court "shall make the determination as soon as reasonably possible" after a verdict is returned. Art. 46B.005(d).

It is fundamental that a defendant has the right to be competent for the duration of his trial. Art. 46B.005(d) (allowing the competence issue to be raised before or during trial); *Ex parte LaHood, supra,* at 57 (citing *Drope v. Missouri,* 420 U.S. 162, 181 (1975) ("Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.")).

In *Drope,* the United States Supreme Court considered circumstances similar to those presented here. On the second day of his trial, Drope shot himself in the abdomen and did not appear for trial. He remained hospitalized during the remainder of the trial, which continued through punishment without Drope's presence. Drope filed a motion for new trial, alleging that the trial court had erred in continuing the trial without evidence that his absence from the trial was voluntary. At the hearing on Drope's motion, the record reflected that Drope "woke up in the hospital" and that he had told a police officer that he had shot himself. *Id.* at 167. The trial court found, based on the evidence, that Drope's absence "was due to his own voluntary act in shooting himself; . . . ." *Id.* at 168.

Almost two years after his trial ended, Drope filed a motion to vacate the conviction and sentence, alleging that his constitutional rights had been violated because the trial court had failed to order a psychiatric examination before trial and had continued the trial in Drope's absence. *Id.* When the hearing on the motion was held, a psychiatrist who had examined Drope before his trial testified that, in his opinion, "There was reasonable cause to believe that a person who attempted to commit suicide in the midst of a trial might not be mentally competent to understand the proceedings against him" and that a competence evaluation should be done. *Id.* at 169.

On appeal, the appellate court held that "petitioner's suicide attempt did not create a reasonable doubt of his competence as a matter of law, that petitioner had failed to demonstrate the inadequacy of the procedures employed for protecting his rights, and that the finding of the trial court was not clearly erroneous." *Id.* at 170. The Missouri Supreme Court affirmed the lower appellate court's decision. *Id.* at 171.

The United States Supreme Court granted certiorari on two claims: petitioner was deprived of due process of law by the failure of the trial court to order a psychiatric examination with respect to his competence to stand trial; and by the conduct, in his absence, of a portion of his trial on an indictment charging a capital offense.

Citing Blackstone,[15] the United States Supreme Court stated that the prohibition against trying a mentally incompetent defendant "is fundamental to an adversary system of justice." *Id.* at 172. "In _Pate v. Robinson, 383 U.S. 375 (1966),_ we held that the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Id.* It continued,

> In the present case there is no dispute as to the evidence possibly relevant to petitioner's mental condition that was before the trial court prior to trial and thereafter. Rather, the dispute concerns the inferences that were to be drawn from the undisputed evidence and whether, in light of what was then known, the failure to make further inquiry into petitioner's competence to stand trial, denied him a fair trial. In such circumstances we believe it is "incumbent upon us to analyze the facts in order that the appropriate enforcement of the federal right may be assured." _Norris v. Alabama, 294 U.S. 587, 590 (1935)._

*Id.* at 174-75.

The Supreme Court's opinion discussed voluntary absence only in the context of the pleadings and the positions of the parties that were argued in trial and on appeal. The entirety of its analysis of the law was a discussion of competence to stand trial, and its holding was on that basis.

> Our resolution of the first issue raised by petitioner [failure to order a psychiatric examination] makes it unnecessary to decide whether, as he contends, it was constitutionally impermissible to conduct the remainder of his trial on a capital offense in his enforced absence from a self-inflicted wound.

*Drope,* at 182.

The Supreme Court went on.

> The Missouri Court of Appeals concluded that, had further inquiry into petitioner's competence to stand trial been constitutionally mandated in this case, it would have been permissible to defer it until the trial had been completed. Such a procedure may have advantages, at least where the defendant is present at the trial and the appropriate inquiry is implemented with dispatch. See Note, 81 Harv. L. Rev., at 469; _Hansford v. United States, 127 U. S. App. D. C. 359, 360, 384 F.2d 311, 312 (1966) (rehearing en banc denied)_ (statement of Leventhal, J.); _Jackson v. Indiana, 406 U.S., at 741._ However, because of petitioner's absence during a critical stage of his trial, neither the judge nor counsel was able to observe him, and the hearing on his motion for a new trial, held approximately three months after the trial, was not informed by an inquiry into either his competence to stand trial or his capacity effectively to waive his right to be present.

> The question remains whether petitioner's due process rights would be adequately protected by remanding the case now for a psychiatric examination aimed at establishing whether petitioner was in fact competent to stand trial in 1969. Given the inherent difficulties of such a *nunc pro tunc* determination under the most favorable circumstances, *see* _Pate v. Robinson, 383 U.S., at 386-387; Dusky v. United States, 362 U.S., at 403,_ we cannot conclude that such a procedure would be adequate here. *Cf.* _Conner v. Wingo, 429 F.2d, at 639-640._ The State is free to retry petitioner, assuming, of course, that at the time of such trial he is competent to be tried.

*Id.* at 182-83.

The Supreme Court clearly made competence to stand trial the first issue to be resolved. If this appellant was not competent, the issue of the voluntariness of appellant's physical absence from the trial is immaterial as to whether the trial court's judgment must be reversed. A determination on the voluntariness of the absence of the defendant would not resolve this appeal. It is true that the Code provides that, if a defendant's absence from the trial was voluntary, Article 33.03 permits the trial to continue until its conclusion in the defendant's absence. Ordinarily, this provision applies when a defendant jumps bail and absconds, but applying the concept of voluntary absence to a person who is incompetent is problematic. We agree with the United States Supreme Court that, under such circumstances, logic compels us to first decide whether a defendant is competent and, only if he is found to be competent, to decide whether his absence was voluntary. To do otherwise would deny a defendant the statutory right to have a jury decide whether he is competent. Only after a determination of competence is made should a court consider the question of the voluntariness of a competent defendant's absence.

Unlike the appellant in *Drope,* some evidence about appellant's competence immediately after his gunshot wound was introduced at a hearing on that issue. During that hearing, the trial court decided this case on the basis of the voluntariness of appellant's absence. "Some evidence" is a low bar; it requires a showing of only a quantity more than none or a scintilla. *Turner v. State,* No. AP-76,580, 2013 WL 5808250, at *11 (Tex. Crim. App. Oct. 30, 2013) (quoting *Ex parte LaHood,* 401 S.W.3d at 52-53). Appellant's psychiatrist, who had treated appellant in the period between the shooting and the suicide attempt, testified that, from what he had been told about appellant's injuries, appellant could not assist his attorneys. We are unpersuaded that the lapse of time alone is an adequate reason to reverse for a new trial rather than for a retrospective competency evaluation. The court of appeals, therefore, erred by determining that a reversal for a new trial was the appropriate remedy rather than abating for a retrospective competency evaluation. We note that, as the Supreme Court determined in *Drope,* there are circumstances in which a retrospective competency evaluation may not be appropriate due to the lapse of time or other circumstances that would indicate that it cannot reliably be done, but we are unpersuaded that those circumstances preclude a retrospective competency evaluation in this case, where "some evidence" about appellant's competence is available for a jury's consideration. Given the record, we find that a retrospective competence hearing as to both guilt and punishment phases is the appropriate remedy.

## IV. Conclusion

Neither the trial court nor the court of appeals followed the analysis structures set out in Texas statutes and Supreme Court precedent. We remand this cause to the trial court for a retrospective competence hearing, using procedures that are in accord with our state statutes and the Supreme Court's ruling in *Drope,* to determine whether appellant was competent. Upon remand, a jury must determine whether appellant was competent to stand trial by assessing whether he did not have sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against him. *See* Art. 46B.003.

If the jury determines that appellant was competent, then the trial court shall consider whether the appellant's physical absence may properly be characterized as a voluntary absence under Article 33.03. If, however, the jury determines that appellant was incompetent, the trial court need not reach the question of whether his physical absence from the trial during the remainder of the guilt phase and at the punishment phase was voluntary under Article 33.03; under Texas law, the necessary consequence of a determination of incompetence is that the trial should not have proceeded beyond the point of appellant's incompetence except as permitted by Texas law. In this case, the trial court shall proceed pursuant to the dictates of Article 46B.003.

## DISSENTING OPINION

KEASLER, J., filed a dissenting opinion, in which KELLER, P.J., and HERVEY, J., joined.

This case requires that we confront the issues relating to the intersection of the principles of voluntary absence and

competence to stand trial: does a finding of one preclude the other? It is a question the majority does not correctly answer. I would hold that, by voluntarily absenting himself from his trial, David Brown has waived his right to be present at trial. And as a result of his voluntary absence, Brown cannot successfully challenge the trial judge's denial of his continuance and finding that he was competent.

A criminal defendant who is incompetent may not be put to trial without violating due process.[1] "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial."[2] The constitutional standard for competency to stand trial asks whether the defendant has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him.[3]

The requirement that a criminal defendant be competent derives from several constitutional concepts borne from due process—the presumption of innocence, the right to assistance of counsel, and the ability to assist in ones own defense. [4] "It also has been said that the requirement of competence is a byproduct of the rule requiring that a defendant be present at trial, since a trial of an incompetent defendant is virtually a trial *in absentia.*"[5] The concepts of required presence and competency are constitutionally similar in that, at bottom, they require the defendant's presence—both physically and mentally. It has long been the rule that a defendant may waive his right to be physically present at trial.[6] Like the Federal Rules of Criminal Procedure and the United States Supreme Court before its enactment, we have held that a defendant may waive his right to be present.[7] In an analogous situation to that presented here, the Supreme Court has held that the defendant loses his right to be present when he is removed from a trial based upon his disruptive behavior.[8] Our statutory law codifies this long-standing rule. Texas Code of Criminal Procedure Article 33.03 states in relevant part, that "[i]n all prosecutions for felonies, the defendant must be personally present at the trial[.]" However, Article 33.03 expressly—and constitutionally[9]—permits the trial to continue in instances where the defendant "voluntarily absents" himself during trial which essentially constitutes a waiver of his rights to be present. It is, therefore, logically consistent that a defendant may waive his right to be competent at trial. Regardless of the preferred nomenclature, this case illustrates why waiver principles (and perhaps equity principles) suggest that a defendant, in certain instances, should not be permitted to present mid-trial allegations of incompetence or claims regarding a judge's failure to comply with Texas Code of Criminal Procedure Chapter 46B.[10] Here, the facts upon which Brown grounds his claims and assertions of incompetence were the result of his own intentional and voluntary actions, and he should not prevail in his complaints about their consequences.

The Supreme Court warns that waiver of constitutional rights should not be taken lightly and should be found only upon an intentional relinquishment of those rights.[11] It follows that a court must determine whether a defendant's voluntary absence—and by extension a waiver of his right to be present at trial—was truly voluntary. Because Brown's claims below injected his alleged incompetence into his challenge of the judge's finding that he voluntarily absented himself, the question becomes whether Brown's attempted suicide was the product of an intentional, voluntary action.

We review voluntary-absence findings under an abuse-of-discretion standard.[12] An appellate court must consider whether the trial judge's ruling was arbitrary or unreasonable.[13] The evidence presented at the informal competency hearing held pursuant to Article 46B.004(c),[14] in addition to the other evidence the judge could consider, supports the judge's finding that Brown was voluntary absent.

According to the testimony taken at the hearing, there were no witnesses to the shooting and when the witnesses testified at the hearing, a thorough investigation had not been conducted. The responding officer opined that Brown attempted suicide based on the nature of the wound and the fact that a pistol was lying in the blood-stained grass where Brown was discovered by neighbors. The officer spoke to a witness who stated that on the night before the suicide attempt, Brown was "despondent over the way the Court proceedings were going" and discussed with that neighbor how to handle Brown's affairs if Brown was convicted. Brown's treating doctor at the hospital told another officer that the bullet entered through Brown's mouth, went up through his eye and lodged in his brain, but the doctor could not confirm that

the injury was self-inflicted. Brown's psychiatrist, Dr. Root, testified that he was treating Brown for depression before his trial began. Although Dr. Root conceded to not examining Brown after his suicide attempt, Dr. Root stated that suicide "suggests mental illness."

From the testimony and circumstantial evidence, the judge could have reasonably found that Brown shot himself. The nature of Brown's injury strongly suggests that conclusion. The judge's finding that Brown's absence was not a result of incompetence, but was voluntary, is equally supported. As the State points out in its brief, the judge recently witnessed Brown testify in his own defense in the guilt phase and withstand cross-examination without any indication that he suffered from incompetence. There is certainly no evidence suggesting that Brown was incompetent—that he could not understand the nature of the proceedings against him or assist his counsel in presenting a defense—at any point before Brown attempted suicide. Brown's competence was not in question until he sustained the gunshot wound. Brown's attempted suicide may be indicative of mental illness, but it is not dispositive proof that he was legally incompetent or incapable of performing an intentional and voluntary act. It is equally reasonable to infer that Brown, having determined that his murder trial was not going his way and facing the prospect of a life sentence, consciously and with the full understanding of the gravity of his choices decided to take his own life. The judge's finding that Brown voluntarily absented himself was not an abuse of discretion. Several state courts of appeals' decisions support this conclusion.

In _Maines v. State_, the Eastland Court of Appeals addressed a similar factual situation.[15] At issue was whether the trial judge abused his discretion in failing to stop the trial and convene a separate jury to consider his competency.[16] Maine contended that he was incompetent during the second day of his trial during the guilt phase due to an overdose of prescription drugs. After being hospitalized for two days, Maines returned to trial, but his counsel claimed he was irrational and incoherent and questioned his competency to stand trial.[17] The judge held an informal competency inquiry and found the evidence of incompetency insufficient. The court of appeals found that, because Maines choose to overdose on medication, his trial could continue because he voluntarily absented himself.[18]

Similarly, the Fort Worth Court of Appeals held in _Bottom v. State_ that Bottom's voluntary choice in ingesting a large quantity of medication with the goal of committing suicide was a voluntary absence and his trial properly continued without his presence.[19] Without needing to address Chapter 46B's proper application, the court put it succinctly: "Because Bottom acted voluntarily and because he cannot avoid trial by intentionally disabling himself, we overrule his point of error."[20] Without an express claim of incompetence, the appellant in _Heard v. State_ alleged that his absence from trial was involuntary because it was the result of intoxication.[21] Finding that Heard's intoxication was voluntary, the court of appeals held that his trial properly continued.[22]

In an unpublished opinion in _Hill v. State_, the Fort Worth Court of Appeals again confronted the issue of a defendant's ingestion of medication during his trial causing his absence.[23] After surveying the above cases, the court held that, assuming that Hill did consume drugs that potentially rendered him incompetent—even if that was not the intentional result—it was a voluntary act, and therefore constituted a voluntary absence at trial.[24]

A valid finding that a defendant voluntarily absented himself should end the competency inquiry. A defendant who chooses to end his participation in his own trial through affirmative, voluntary conduct has waived both Chapter 46B's statutory procedural provisions and the substantive rights they protect. The Supreme Court summarized this position's underlying principle over a hundred years ago: "It does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced."[25] The majority arrives at the opposite conclusion by misreading _Drope v. Missouri_[26] for the proposition that when issues of competency and voluntary absence arise, a court is required to first address the competency issue. In reference to _Drope,_ the majority states, "We agree with the United States Supreme Court that, under such circumstances, logic compels us to first decide whether a defendant is competent, and only if he is found to be competent, to decide whether his absence was voluntary."[27] The Supreme Court's opinion contains no such holding, even by implication.

Even if a valid finding of voluntary absence does not end the competence inquiry under Chapter 46B as I suggest, *Drope* lends little guidance to the resolution of the issues presented, despite the majority's reliance upon it. And even if *Drope* is instructive in some way on the instant cause, it certainly does not compel the result the majority reaches. *Drope* presented easily distinguishable facts from those presented here. The Court held that after shooting himself during the pendency of his trial, Drope was entitled to a stay of his trial so that a competency determination could be made.[28] However, the Court's decision was informed by a record indicating Drope suffered significant mental issues even before his trial began.[29] The Court highlighted the following facts as significant: a psychiatric examination report brought to the judge's attention pretrial noted that Drope had "difficulty participating well," "had a difficult time relating," and "was markedly circumstantial and irrelevant in speech" and contained a diagnosis of borderline mental deficiency and chronic anxiety reaction with depression; Drope's wife (and victim of the offense) believed Drope was sick and needed psychiatric care; Drope had past episodes of irrational actions, like deliberately falling down the stairs when he did not get his way or was worried about something; Drope's irrational conduct of attempting to choke his wife days before she was set to testify against him in a trial which "depended in large measure on the indulgence of his wife"; and of course, Drope's self-inflicted gunshot wound.[30]

The *Drope* opinion stands broadly for the propositions that (1) a trial judge must be alert to changing circumstances suggesting a defendant's incompetence and (2) competency issues require considering the aggregate weight of all indicia of incompetence. The Court was clear that there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed[.]"[31] The majority incorrectly finds factual similarity between *Drope* and the present case. First, unlike *Drope,* the trial judge was able to observe Brown's demeanor in trial, including his testimony on direct and cross examination, a day before his suicide attempt. Second, the extensive evidence of Drope's significant mental illness convincingly suggested that his illness likely had a bearing on his competency even before his trial began.[32] The record before us does not support a similar conclusion. Unlike Brown's situation, Drope's suicide attempt was just the last event in a long list of evidence pointing to his incompetence and was likely a product of it. Contrary to *Drope*'s fact-specific approach, the majority's opinion treats Brown's suicide attempt as a "fixed or immutable sign" that automatically triggers a stay and formal incompetency trial under Chapter 46B's provisions.

I would find that the trial judge did not abuse her discretion in finding that Brown voluntarily absented himself, and as result was not entitled to a continuance or formal competency trial. Therefore, remanding for a retrospective competency hearing pursuant to Chapter 46B is inappropriate. Accordingly, I would reverse the court of appeals' judgment.

COCHRAN, J., filed a concurring opinion in which MEYERS and ALCALA, JJ., joined.

I join the majority opinion and agree to remand this case for a retrospective competency hearing. I write separately because the resolution of this unusual case is largely dependant upon its specific facts. We do not frequently encounter the situation in which a defendant has shot himself in the head during the trial. Appellant's absence from trial was "voluntary" in the sense that he attempted to commit suicide, but he was also "incompetent" in the sense that he was unable to assist his attorneys throughout the rest of the trial and during the punishment phase. Indeed, there is apparently a question of whether appellant is still incompetent under Article 46B.003.[1] The legal issue is not a pure "Alphonse and Gaston" of which comes first — "voluntary absence" or "incompetency." Rather, the issue is whether, viewing the totality of the facts, there was a "suggestion" of incompetency. If so, the trial judge cannot avoid an informal inquiry and, if warranted, a formal hearing, by finding that the defendant "voluntarily" tried to commit suicide and therefore "voluntarily" absented himself from trial.

Certainly a person could voluntarily attempt suicide with full awareness of the consequences and an appreciation of the final nature of that act. But the very act of shooting oneself in the head may well be an irrational act and is certainly some evidence of mental disturbance.[2] And that was precisely the testimony of Dr. Root, appellant's treating psychiatrist.[3] Furthermore, the fact that appellant was being treated by a psychiatrist for "depression" after fatally shooting his neighbor is additional evidence of mental disturbance, as was the fact that appellant was "despondent" the night he shot himself. And the evidence showed that, as a result of his wounds, appellant was comatose and on life support. He was indisputably not capable of assisting in his own defense at that time.[4]

I agree that this evidence was sufficient to raise an issue of possible incompetency under Article 46B.004(c)[5] because there was "some evidence" to support such a finding.[6] As we noted in *Druery,* "[a] determination that there is `some evidence' of incompetency then leads to a formal hearing before a jury."[7] Because the trial had already begun at the time of appellant's suicide attempt, the trial judge had authority to continue the trial and hold a formal competency hearing-addressing both retrospective and prospective competency-some time before sentencing.[8] But at the sentencing hearing-a time at which a defendant must be competent-the trial judge refused to even consider defense counsel's competency motion.[9]

In this case, the trial judge apparently took the position that, because appellant voluntarily shot himself in the head, he was *ipso facto* voluntarily absent from trial, and therefore, it would not matter if he were incompetent either before or after he shot himself.[10] Under that theory, appellant could be crazy as a coot, but if he could not attend the rest of the trial because he had shot himself, the incompetency statutes do not apply. After hearing the evidence presented the day after the suicide attempt, the trial judge denied the request for a competency hearing, finding "that the Defendant was-the Defendant is voluntarily absent. And the Court is also finding that he was competent-he was allowed to testify."[11]

As the majority correctly notes, in *Drope*[12] the Supreme Court unanimously rejected this very reasoning. The trial judge in that case stated that Drope's absence from trial "`was due to his own voluntary act in shooting himself; done for the very purpose of avoiding trial.'"[13] The Supreme Court noted that it did not need to address the state court's conclusion "that an attempt to commit suicide does not create a reasonable doubt of competence to stand trial as a matter of law"[14] because there was other evidence of Drope's possible incompetence and his suicide attempt "did not stand alone."[15]

In this case, as in *Drope,* the self-inflicted gunshot wound was "near vital organs [and] does not suggest malingering."[16] Like the Supreme Court, I recognize that there is not a necessary correlation between a suicide attempt and mental illness or incompetence,[17] but a *bona fide* attempt to kill oneself surely deserves some psychiatric inquiry and consideration of other evidence suggesting incompetence.[18] Here, as in *Drope,* even assuming that the right to be present at one's trial may be waived by attempted suicide, it is "clear that there was an insufficient inquiry to afford a basis for deciding the issue of waiver."[19]

Because the trial judge did not make a sufficient inquiry into appellant's possible incompetency, either the day after the suicide attempt or at the sentencing hearing, I agree that this case must be remanded for a retrospective hearing.

# DISSENTING OPINION

PRICE, J., filed a dissenting opinion.

An accused has a constitutional right to be present in the courtroom at every stage of his trial.[1] Even an accused who is present in body may nonetheless be deprived of that basic right if he is of sufficiently unsound mind that he lacks the ability to participate meaningfully in his own defense or to rationally comprehend what is happening around him, and such an accused cannot be made to stand trial under those circumstances consistent with due process.[2] This is not to say that the constitutional right to be present at trial can never be forfeited; an accused who is of sound mind but who voluntarily absents himself after his trial has begun,[3] or who persists in disruptive or otherwise contumacious behavior during the course of his trial,[4] may lose his right to complain later that he was tried *in absentia.* And it is no great leap from this last proposition also to conclude that an accused who is of sound mind when his trial begins, but who, during the course of trial, takes some deliberate action to render himself of *unsound* mind, should be estopped from later complaining that he has been put to trial without the ability to participate meaningfully in his defense or to rationally comprehend the proceedings against him. The question presented in this case, it seems to me, thus boils down to whether the appellant was of sufficiently sound mind when he took the action that the trial court has construed to be a deliberate attempt to absent himself—both physically *and* mentally—from his trial.

I do not think that we would want to say that the appellant "voluntarily" absented himself, and that he should therefore be estopped from raising a Sixth Amendment or due process complaint, if his choice to try to take his own life was primarily the product of a debilitating mental illness.[5] But in the context of voluntariness, the appropriate inquiry is not whether the appellant could cooperate with counsel and/or comprehend the proceedings. Strictly speaking, these considerations do not directly inform the question of whether the action he took to absent himself (both in body and mind) after the inception of the trial proceedings was voluntary. It therefore strikes me as inappropriate to remand this cause for a competency hearing under Chapter 46B of the Code of Criminal Procedure.[6] In my view, we should instead ask whether an adequate inquiry was undertaken into the question of the appellant's mental condition with respect to the voluntariness of his apparent suicide attempt. If his suicide attempt was not, in fact, "voluntary"—that is to say, not the product of a free will unencumbered by the undue pressures that may be exerted on the mind by a *bona fide* and debilitating mental illness—then the trial court erred to proceed to trial in the appellant's absence in violation of his Sixth Amendment right to be *physically* present, regardless of whether he was mentally competent to stand trial.

This view is entirely consistent with *Drope v. Missouri*.[7] *Drope* does not support the proposition that a mid-trial suicide attempt, without more, necessarily raises an issue of competency to stand trial. During the course of his trial for a sexual assault perpetrated against his wife, Drope shot himself in the abdomen. But Drope's self-inflicted gunshot wound was only the culmination of a host of circumstances suggesting irrationality on his part, which led the Supreme Court to conclude that a mid-trial inquiry should have been conducted into his competency to stand trial. For example, the Supreme Court observed:

> [W]e believe the Missouri courts failed to consider and give proper weight to the record evidence. Too little weight was given to the testimony of petitioner's wife that on the Sunday prior to trial he tried to choke her to death. For a man whose fate depended in large measure on the indulgence of his wife [who, by Missouri law, could not be compelled to testify against him], who had hesitated about pressing the prosecution, this hardly could be regarded as rational conduct.[8]

It is true that the Missouri appellate court had held that, standing alone, Drope's "suicide attempt did not create a reasonable doubt of his competence as a matter of law[.]"[9] But the Supreme Court did not weigh in on the validity of this specific proposition, merely holding that the totality of the evidence, culminating in Drope's mid-trial suicide attempt, was sufficient to place Drope's competency in doubt.[10]

Having concluded in *Drope* that a competency inquiry was constitutionally required, the Supreme Court accordingly found it "unnecessary to decide whether . . . it was constitutionally impermissible to conduct the remainder of [Drope's] trial on a capital offense in his enforced absence from a self-inflicted wound."[11] The Supreme Court did note, however, that "what we have already said" with respect to the issue of Drope's competency "makes it clear that there was an insufficient inquiry to afford a basis for deciding the issue of waiver" of his Sixth Amendment right to be present.[12]

In the instant case, unlike in *Drope,* there is little (if any) record evidence, apart from, or in addition to, the appellant's attempted suicide itself, to suggest a level of irrationality sufficient to engender doubt as to whether he might have been incompetent, and hence *mentally* absent, *before* he shot himself. And if he became absent (both bodily and mentally) only by virtue of having shot himself, then it seems to me that the only issue to be decided is whether he absented himself *voluntarily.* Under these circumstances, I fail to see the utility of remanding the cause to the trial court with instructions to proceed with a retrospective determination of the appellant's competency to stand trial. If we are to remand the cause to the trial court at all, it should be only for a more thorough inquiry into the voluntariness of the appellant's act by which he rendered himself unable to attend the balance of his trial. In the words of *Drope* itself, we could remand for a more searching exploration of the appellant's "capacity *effectively* to waive his right to be present" at the time he inflicted the gunshot wound on himself,[13] focusing particularly on the extent to which any debilitating mental illness may have fueled his attempted suicide. Should the trial court find that the appellant's choice to shoot himself was too much the product of a debilitating mental illness to be fairly deemed a *voluntary* absence from trial, then it cannot be said that he "waived" his constitutional right to be present at trial,[14] and we should require the trial court to conduct a

new trial. For, in that event, the trial court's insistence on trying the case to completion in the appellant's absence deprived him of his Sixth Amendment right to be physically present at every phase of his trial. But in the event that the trial court should find, instead, that the appellant's choice to shoot himself was wholly voluntary, notwithstanding any mental illness he might have suffered from, then the appellant's original conviction should stand, regardless of the outcome of any inquiry this Court may order into his competency under Chapter 46B.[15] For, if the appellant intentionally rendered himself absent by his own willful misconduct, then he essentially "waived" his right to be present—both in body *and* in mind—and the issue of his competency to stand trial becomes moot.[16]

Because the Court remands this cause to the trial court to conduct what is effectively, in my view, a needless competency determination, I respectfully dissent.

[1] *State v. Brown,* 393 S.W.3d 308 (Tex. App.-Houston [1st Dist.] 2012).

[2] *State v. Brown,* 393 S.W.3d 308, 315 (Tex. App.-Houston [1st Dist.] 2012) (op. on reh'g).

[3] 1. Did the trial court abuse its discretion when it determined that Appellant's absence from his trial due to his attempted suicide was voluntary?

2. Is a defendant who voluntarily renders himself absent from trial entitled to a competency evaluation?

3. Is a trial court required to immediately stay proceedings for a competency evaluation of an unconscious defendant, or does the trial court have the discretion to order the competency evaluation at any time before sentence is pronounced?

4. If a trial court fails to stay proceedings and order a competency evaluation, is abatement for a retrospective competency evaluation the proper remedy or should an appellate court conduct a harm analysis?

[4] Article 33.03 provides: "In all prosecutions for felonies, the defendant must be personally present at the trial, and he must likewise be present in all cases of misdemeanor when . . .; provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion. When the record in the appellate court shows that the defendant was present at the commencement, or any portion of the trial, it shall be presumed in the absence of all evidence in the record to the contrary that he was present during the whole trial. . . ."

[5] The officer testified that his opinion was based on both the opinion of Houston Fire Department members, who arrived on the scene first, that the wound was self-inflicted and the fact that the pistol was found lying in the grass next to appellant's unconscious body when he was discovered.

[6] The court of appeals mistakenly attributed Officer Leos's testimony to Officer Weller. *State v. Brown,* 393 S.W.3d at 311.

[7] The psychiatrist's testimony was obtained by telephone and was given in the judge's chambers and outside the presence of the jury.

[8] Appellant's roommate testified that the injury was to the left temporal lobe, but that section of the brain is not on the bullet track, which was consistently described as going through the mouth and eye and into the brain tissue above the eye, which is the frontal lobe.

[9] Appellant was physically recovered enough to be "wheeled in from the hospital to be sentenced." *Brown v. State,* 393 S.W.3d 308, 318 (Tex. App.-Houston [1st Dist.] 2012) (op. on reh'g). There is no discussion by the court of appeals of the level of appellant's neurological recovery.

[10] Defense counsel cited Art. 4602, §2(b), an article that seems not to exist. Counsel's argument indicates that he was referring to Art. 46B.004(c).

[11] *Brown,* 393 S.W.3d 308 (Tex. App.-Houston [1st Dist.] 2012).

[12] *Brown,* 393 S.W.3d at 315 (op. on reh'g).

[13] Texas Rule of Appellate Procedure 66.3 provides six situations in which this Court is authorized to review a case, all of which require an action by a court of appeals. On its face, this ground is subject to refusal pursuant to *DeGrate v. State,* 712 S.W.2d 755, 756 (Tex. Crim. App. 1986). However, the argument is based on objections to actions by the court of appeals.

[14] Such a jury must be separate from that empaneled for the trial on the merits. Art. 46B.051(c). However, a jury trial is not now always required, as it was under the old version of the statute. The new version of the statute now states,

(b) Except as provided by Subsection (c), the court shall hold a trial under Subchapter C before determining whether the defendant is incompetent to stand trial on the merits.

(c) A trial under this chapter is not required if: Neither party's counsel requests a trial on the issue of incompetency; (2) neither party's counsel opposes a finding of incompetency; and (3) the court does not, on its own motion, determine incompetency.

Art. 46B.005(b), (c).

Here, we remand for a jury trial on competence because appellant requested one and the provisions in subsection (c) are inapplicable.

[15] If a person became "mad" after pleading, he should not be tried, "for how can he make his defense?" 4 W. Blackstone, Commentaries *24.

[1] *Cooper v. Oklahoma,* 517 U.S. 348, 354 (1996) ("We have repeatedly and consistently recognized that `the criminal trial of an incompetent defendant violates due process.'") (quoting *Medina v. California,* 505 U.S. 437, 453 (1992)); *Turner v. State,* No. AP-76,580, 2013 WL 5808250, *10 (Tex. Crim. App. Oct. 30, 2013).

[2] *Drope v. Missouri,* 420 U.S. 162, 171 (1975); *Turner,* 2013 WL 5808250 at *10.

[3] *Dusky v. United States,* 362 U.S.402, 402 (1960).

[4] *Ex parte Mines,* 26 S.W.3d 910, 914 (Tex. Crim. App. 2000).

[5] *Id.*

[6] *See, e.g, Taylor v. United States,* 414 U.S. 17, 18-20 (1973); *Diaz v. United States,* 223 U.S. 442, 455 (1912).

[7] *Garcia v. State,* 919 S.W.2d 370, 374-75 (Tex. Crim. App. 1994); *Gonzales v. State,* 515 S.W.2d 920, 920 (Tex. Crim. App. 1974); *see Crosby v. United States,* 506 U.S. 255, 260 (1993); *Diaz,* 223 U.S. at 455; FED. R. CRIM. PRO. 43(c)(1)-(2).

[8] *See, e.g., Illinois v. Allen,* 397 U.S. 337, 342-43 (1970).

[9] *See Taylor,* 414 U.S. at 18-19 (holding Federal Rule of Criminal Procedure 43 constitutional in permitting the continuation of a defendant's trial when he voluntarily absents himself, and that such an absence is a waiver of his right to be present).

[10] TEX. CODE CRIM. PROC. ch. 46B (West 2012) (establishing trial court procedures in determining a defendant's competency to stand trial).

[11] *See Johnson v. Zerbst,* 304 U.S. 458, 464 (1938); *see also Pate v. Robinson,* 383 U.S. 375, 384 (1966) (holding that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently `waive' his right to have the court determine his capacity to stand trial.").

[12] *Montoya v. State,* 291 S.W.3d 420, 426 (Tex. Crim. App. 2009).

[13] *Id.*

[14] TEX. CODE CRIM. PROC. art. 46B.004(c) (West 2012) ("On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.").

[15] *Maines v. State,* 170 S.W.3d 149 (Tex. App.-Eastland 2005, no pet.).

[16] *Id.* at 149.

[17] *Id.* at 150.

[18] *Id.*

[19] *Bottom v. State,* 860 S.W.2d 266, 267 (Tex. App.-Fort Worth 1993, no pet.).

[20] *Id.*

[21] *Heard v. State,* 887 S.W.2d 94, 97-98 (Tex. App.-Texarkana 1994, pet ref'd).

[22] *Id.* at 98-99.

[23] *Hill v. State*, No. 2-06-094-CR, 2007 WL 866476 (Tex. App.-Fort Worth Mar. 22, 2007, pet ref'd) (not designated for publication).

[24] *Id.* at *9.

[25] *See Diaz,* 223 U.S. at 457.

[26] 420 U.S. at 162.

[27] *Ante,* op. at 14.

[28] *Drope,* 420 U.S. at 181-82.

[29] *Id.* at 179 ("[W]e conclude that the record reveals a failure to give proper weight to the information suggesting incompetence which came to light during trial. This is particularly so when viewed in the context of the events surrounding petitioner's suicide attempt and against the background of the pretrial showing.").

[30] *Id.* at 175-80.

[31] *Id.* at 180-81.

[32] *Id.* at 181.

[1] TEX. CODE CRIM. PROC. art. 46B.003(a) ("A person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person.").

[2] *See, e.g., United States v. Mason,* 52 F.3d 1286, 1290-93 (4th Cir. 1995) (trial court erred in denying motion for retrospective competency hearing by deciding that defendant's suicide attempt was subject to "competing inferences"; instead, trial court must consider all of the evidence, "including evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions concerning the defendant's competence"; trial judge "must `look at the record as a whole and accept as true all evidence of possible incompetence' in determining whether to order a competency hearing."); *United States v. Latham,* 874 F.2d 852, 858-59 (1st Cir. 1989) ("It defies common sense to maintain that a sane defendant would attempt suicide to avoid a trial on drug charges. And, death is not the type of `voluntary absence from trial' that concerns us."); *United States v. Crites,* 176 F.3d 1096, 1098 (8th Cir. 1999) (trial judge did not commit clear error in finding that defendant's suicide attempt "by intentionally ingesting a potentially lethal mix of intoxicants and by leaving a suicide note" was a voluntary absence); *Peacock v. State,* 77 So.3d 1285, 1290-91 (Fla. Dist. Ct. App. 2012) (holding that "the issue of whether a suicide attempt constitutes a willful absence from sentencing is not susceptible to a bright-line rule, but rather is a factually intensive question that ordinarily must be addressed on a case-by-case basis. . . . Although a suicide attempt could be deemed voluntary in some circumstances, a suicide attempt could also be an involuntary product of mental illness."); *State v. Reed,* 992 P.2d 1132, 1134 (Ariz. Ct. App. 1999) (disagreeing with cases that purport to hold "that all absences resulting from attempted suicide are a voluntary waiver of the defendant's right to attend trial," but crediting doctor's testimony that this defendant, although depressed was not psychotic, and he understood what he was doing when he decided "`to abort his trial by killing himself'" with an unsuccessful suicide attempt).

[3] As the court of appeals noted, Dr. Root testified that "(1) if the wound were self-inflicted, there would be a suggestion of mental illness and (2) the extent of [appellant's] injuries made it unlikely that he could provide information to assist in the remainder of the trial." *Brown v. State,* 393 S.W.3d 308, 312 (Tex. App.-Houston [1st Dist.] 2012).

[4] An expert who is appointed to exam a defendant whose competency has been questioned, shall consider, *inter alia,*

(1) the capacity of the defendant during criminal proceedings to:

(A) rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings;

(B) disclose to counsel pertinent facts, events, and states of mind;

(C) engage in a reasoned choice of legal strategies and options;

(D) understand the adversarial nature of criminal proceedings;

(E) exhibit appropriate courtroom behavior; and

(F) testify[.]

TEX. CODE CRIM. PROC. art. 46B.024(1). Quite obviously, appellant could do none of these things the day after he shot himself, although he did all of these things the day before he shot himself.

[5] TEX. CODE CRIM. PROC. art. 46B.004(c) ("On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.").

[6] *See Druery v. State,* 412 S.W.3d 523, 538 (Tex. Crim. App. 2013) (noting that a trial judge conducting an informal inquiry into possible incompetence "should not weigh competing evidence of incompetency because the informal hearing is not the appropriate venue for determining the merits of the claim. Rather, the informal inquiry is intended to determine if the issue is sufficiently raised to merit a formal hearing.").

[7] *Id.* I am uncertain whether appellant is necessarily entitled to a formal competency hearing or whether experts should first be appointed to examine him pursuant to Article 46B.021(a). I think that there is "some evidence" suggesting incompetency, but if psychiatric experts conclude that appellant's attempted suicide was not the product of such mental disturbance as to affect his "capacity to engage with counsel in a reasonable and rational manner,"Article 46B.024(4), then an informal inquiry into competency would have sufficed. Here, it seems that the trial judge did not conduct even a full informal inquiry into appellant's competence.

[8] TEX. CODE CRIM. PROC. art. 46B.005(d) ("If the issue of the defendant's incompetency to stand trial is raised afer the trial on the merits begins, the court may determine the issue at any time before the sentence is pronounced.").

[9] No sentence may be pronounced upon a defendant who is incompetent. TEX. CODE CRIM. PROC. art. 42.07 ("Reasons to prevent sentence") (a sentence may not be pronounced if "the defendant is incompetent to stand trial; and if evidence be shown to support a finding of incompetency to stand trial, no sentence shall be pronounced, and the court shall proceed under Chapter 46B").

At appellant's sentencing hearing, the trial judge said, "[R]egarding the Defendant's competency at this time, I'm not going to entertain any type of motion for hearing on it." Defense counsel nonetheless persevered in his request for a competency hearing, stating, "[T]he reason is that we think that since he's unable to understand the nature of the proceeding against him and unable-capable to consult with me and his other lawyers in helping with-in the process, then it's a due process violation" and a violation of Texas statutes.

Clearly the trial judge erred in refusing to even consider the issue of appellant's competency at the time of sentencing. At oral argument, the State agreed that this case should be remanded for the trial judge to conduct a competency-to-be-sentenced hearing, but I have a hard time understanding why there should be a distinction between the right to a competency hearing for purposes of the sentencing stage, but no such right for purposes of either the guilt or punishment stages.

[10] The State argues that appellant "cannot claim incompetency by causing it" and that his suicide attempt forfeited his right to complain about his incompetency. That argument, however, flies in the face of *Drope,* discussed *infra.* If appellant *intentionally* caused his incompetency by shooting himself in the head with the express purpose to avoid the trial or cause a mistrial (but not to cause his own death), then the State has an excellent point. But at least so far there is no such evidence in the record. When this case is remanded for a retrospective competency determination, that issue may be addressed.

[11] The trial judge may have mistakenly thought that, if a defendant is competent at the time he testifies on his own behalf, it does not matter that he later becomes incompetent. That is not the law. Rather, the defendant has a right to be competent at *every* stage of the trial, including the sentencing hearing.

[12] *Drope v. Missouri,* 420 U.S. 162 (1975).

[13] *Id.* at 167.

[14] *Id.* at 180.

[15] *Id.* (internal quotation marks omitted).

[16] *Id.* at 181 n.16.

[17] *Id.* The Supreme Court noted,

Of course we also recognize that "the empirical relationship between mental illness and suicide" or suicide attempts is uncertain and that a suicide attempt need not always signal "an inability to perceive reality accurately, to reason logically and to make plans and carry them out in an organized fashion."

*Id.* (citing Greenberg, *Involuntary Psychiatric Commitments to Prevent Suicide,* 49 N.Y. U.L.REV. 227, 234, 236 (1974) and Pokorny, *Myths about Suicide,* in SUICIDAL BEHAVIORS 64-65 (H. Resnik ed. 1968)).

[18] As the Supreme Court delicately put it, Drope's absence "was due to an act which suggests a rather substantial degree of mental

instability contemporaneous with the trial." *Id.* at 181.

[19] *Id.* at 182. The State cites *Bottom v. State,* 860 S.W.2d 266, 267 (Tex. App.-Fort Worth 1993, no pet.) for the proposition that a defendant who had attempted suicide by ingesting pills after his trial began had voluntarily rendered himself absent; therefore, the trial judge properly continued the trial. But in that case, the trial court did "order a competency hearing from which Bottom was found competent to stand trial." *Id.* That is precisely what appellant wanted in this case. The State also relies on *Maines v. State,* 170 S.W.3d 149, 150 (Tex. App.-Eastland 2005, no pet.), but in that case the defendant took an overdose of pills after the first day of trial, so the judge recessed the case for a day, and the defendant was brought from the hospital to the courtroom on the third day. When defense counsel suggested that his client was groggy and might have competency issues, the trial judge conducted an informal competency inquiry, but concluded that there was insufficient evidence to convene a separate jury hearing. *Id.* And by that afternoon the defendant was fully recovered. *Id.* That situation bears no resemblance to the present one.

[1] *Illinois v. Allen,* 397 U.S. 337, 338 (1970).

[2] *Pate v. Robinson,* 383 U.S. 375, 378 (1966).

[3] *Taylor v. United States,* 414 U.S. 17, 19-20 (1973); *Miller v. State,* 692 S.W.2d 88, 90 (Tex. Crim. App. 1985).

[4] *See Allen,* 397 U.S. at 343 ("Although mindful that courts must indulge every reasonable presumption against the loss of constitutional rights, we explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.") (citation omitted). The Supreme Court expressly endorsed the notion in *Allen* that "the privilege [of personally confronting witnesses] may be lost by consent or at times even by misconduct." *Id.* at 342-43 (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 106 (1934), and noting with apparent approval Rule 43 of the Federal Rules of Criminal Procedure, which expressly provides that a criminal trial may proceed to its conclusion in the event that the defendant should voluntarily absent himself). *See* TEX. CODE CRIM. PROC. art. 33.03 (trial may "proceed to its conclusion" if the defendant "voluntarily absents himself" after trial has commenced).

[5] *See Peacock v. State,* 77 So. 3d 1285, 1290 (Fla. Dist. Ct. App. 2012) ("Although a suicide attempt could be deemed voluntary in some circumstances, a suicide attempt could also be an involuntary product of mental illness."); *State v. Finnegan,* 784 N.W.2d 243, 251-52 (Minn. 2010) (rejecting a claim that the defendant's mid-trial suicide attempt was involuntary, in part, because, though given an opportunity to do so in post-conviction proceedings, he "offered no evidence that he was coerced into taking methamphetamine, that he accidentally overdosed, or that he was compelled to do so because of a mental illness").

[6] TEX. CODE CRIM. PROC. ch. 46B.

[7] 420 U.S. 162 (1975).

[8] *Id.* at 179.

[9] *Id.* at 170.

[10] *See id.* at 181 ("Whatever the relationship between mental illness and incompetence to stand trial, in this case the bearing of the former on the latter was sufficiently likely that, in light of the evidence of [Drope's] behavior *including his suicide attempt,* and there being no opportunity without his presence to evaluate that bearing in fact, the correct course was to suspend the trial until such an evaluation could be made.") (emphasis added); *see also People v. Price,* 240 P.3d 557, 562 (Colo. App. 2010) ("A defendant's suicide attempt alone is not necessarily sufficient to establish a `bona fide doubt' as to a defendant's competency to stand trial[,]" *Drope* notwithstanding); *United States v. Davis,* 61 F.3d 291, 304 (5th Cir. 1995) ("[I]n *Drope,* the Supreme Court expressly refused to decide whether an attempted suicide itself creates `reasonable cause' for a competency hearing.").

[11] *Drope,* 420 U.S. at 182. The Supreme Court did not, thereby, "clearly ma[k]e competence to stand trial the first issue to be resolved." *Contra* Majority Opinion at 13.

Drope's suicide attempt was but the last of an "aggregate of . . . indicia" suggesting that he might have been incompetent from the very outset of his trial. *Drope,* 420 U.S. at 180. When the Supreme Court decided that "a nunc pro tunc determination" of competency *vel non* would not be adequate six years after Drope's original trial, it became necessary to reverse his conviction and remand the cause for an entirely new trial. *Id.* at 183. Under these circumstances, there was simply no need to also decide whether Drope's right to be physically present for that portion of his trial following his suicide attempt had been violated (or, indeed, whether such a violation would necessitate a new trial). *Drope* neither held nor otherwise supports the proposition that whenever both competency and the right to be physically present at trial are in issue, a reviewing court is obliged to address the competency issue first.

[12] *Id.* at 182.

[13] *Id.* at 183 (emphasis added).

[14] In *Taylor,* the issue was whether, by voluntarily absenting himself during trial, it could be said that Taylor "waived" his Sixth Amendment right to be present, in the sense that a "waiver" is typically defined to be "an intentional relinquishment or abandonment of a known right or privilege." 414 U.S. at 19 (internal quotation marks omitted) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)). Taylor insisted that no such waiver could have occurred, even if his absence was voluntary, because he was neither formally informed of his right to be present nor formally asked whether he desired to waive it. The Supreme Court rejected the proposition that a waiver of the right to be present must be so formal and could not be established by the mere fact that the defendant voluntarily absented himself under circumstances suggesting that he was undoubtedly aware of his constitutional right to attend all phases of his trial. *Id.* at 20.

[15] At first blush, this may seem at odds with the Supreme Court's observation in *Pate* that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently `waive' his right to have the court determine his capacity to stand trial." 383 U.S. at 384. Not so. As noted earlier, there is no suggestion in the record that the appellant was incompetent to stand trial before he shot himself in the head. If his suicidal act was voluntary in the sense that it was not a product of any debilitating mental illness, then there is nothing to show that he lacked the capacity to waive his right to a competency determination by willfully absenting himself, both in body and mind, from the balance of the trial proceedings.

[16] There is no more question that the appellant was aware of his Sixth Amendment right to be present at all phases of his trial than there was for Taylor. *See* note 14, *ante.*

Save trees - read court opinions online on Google Scholar.

**TIPHINIE BETH AGUILAR, Appellant,**

**v.**

**THE STATE OF TEXAS, Appellee.**

No. 07-13-00317-CR.

**Court of Appeals of Texas, Seventh District, Amarillo.**

April 10, 2015.

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

# MEMORANDUM OPINION

PATRICK A. PIRTLE, Justice.

Appellant, Tiphinie Beth Aguilar, pled guilty in open court to taking a prohibited substance, namely marihuana, into a correctional facility[1] and was sentenced by a jury to ten years confinement and fined $2,500. In a single issue, she asserts on appeal that the trial court erred by failing to grant her *Motion for a New Trial* because evidence presented showed her trial counsel failed to obtain a court-ordered investigator to procure certain character witnesses and similarly failed to secure the testimony of a mitigation expert. We affirm.

# BACKGROUND

In 2012, an indictment issued alleging Appellant intentionally or knowingly took a controlled substance, marihuana, into the Castro County Jail, a correctional facility. In April 2013, she elected to have her punishment assessed by a jury. In July, she stipulated to evidence establishing she committed the offense alleged in the indictment, executed a waiver of certain rights, judicially confessed to the offense, and pled guilty in open court. After finding her guilty, the jury assessed her sentence at ten years confinement and a fine of $2,500.

In her *Motion for a New Trial* and at a hearing on that motion in August of 2013, Appellant asserted her counsel was ineffective for failing to obtain from the court access to an investigator to secure certain character witnesses and/or a mitigation expert to testify on her behalf. In September, the trial court denied the motion and this appeal followed.

INEFFECTIVE ASSISTANCE OF COUNSEL

Because ineffective assistance of counsel claims involve mixed questions of law and fact that often contain subsidiary questions of historical fact, some of which may turn upon the credibility and demeanor of witnesses, *Riley v. State*, 378 S.W.3d 453, 458 (Tex. Crim. App. 2012) (quoting *Kober v.*

*State,* 988 S.W.2d 230, 233 (Tex. Crim. App. 1999)), an appellate court should review the trial court's rulings on the matter for an abuse of discretion, reversing only if the trial court's ruling was clearly erroneous and arbitrary, such as when no reasonable view of the record could support the trial court's ruling. *Odelugo v. State,* 443 S.W.3d 131, 137 (Tex. Crim. App. 2014) (citing *Riley,* 378 S.W.3d at 457).

We examine ineffective assistance of counsel claims by the standard enunciated in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984), and adopted by Texas in *Hernandez v. State,* 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). Appellant has the burden to show by a preponderance of evidence both that (1) trial counsel's performance was deficient in that it **fell below the prevailing professional norms** and (2) the deficiency prejudiced the defendant, that is, but for the deficiency, there is a reasonable probability that the result of the proceedings would have been different. *See Perez v. State,* 310 S.W.3d 890, 893 (Tex. Crim. App. 2010) (citing *Thompson v. State,* 9 S.W.3d 808, 812 (Tex. Crim. App. 1999)). Counsel's conduct is viewed with great deference. *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson,* 9 S.W.3d at 812.

Here, we ask whether there is a reasonable probability that the jury would have had a reasonable doubt as to Appellant's sentence if an investigator had secured the presence of the character witnesses and they had testified in Appellant's favor, and a mitigation expert had appeared and also testified favorably for Appellant. In *King v. State,* 649 S.W.2d 42 (Tex. Crim. App. 1983), the appellant asserted ineffective assistance of counsel, in part, because counsel failed to call witnesses to testify on his behalf. There, the Court of Criminal Appeals stated that the "failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would have benefit[ed] from their testimony." *Id.* at 44.

At the hearing on Appellant's motion, there was no showing there were available character witnesses to be located by an investigator or that Appellant would have benefitted from either their testimony or the testimony of a mitigation expert. In addition, we have reviewed the record and are not convinced Appellant would have benefitted from an investigator's services in locating character witnesses or the testimony of a mitigation expert and do not see a reasonable probability that their testimony would have changed the result of the proceeding. Accordingly, Appellant's issue is overruled.

# CONCLUSION

The trial court's judgment is affirmed.

[1] *See* TEX. PENAL CODE ANN. § 38.11(b) (West 2011). An offense under this section is a third degree felony. *Id.* at 38.11(g).

Save trees - read court opinions online on Google Scholar.

 

CA NO. 2557     COUNT Single Count
INCIDENT NO./TRN:

| THE STATE OF TEXAS | § | IN THE 287TH DISTRICT |
|---|---|---|
| | § | |
| V. | § | COURT |
| | § | |
| JOHN DENNIS CLAYTON ANTHONY | § | BAILEY COUNTY, TEXAS |
| | § | |
| STATE ID NO.: TX | § | |

## ORDER OF DEFERRED ADJUDICATION

| Judge Presiding: | HON. GORDON H. GREEN | Date Order Entered: | 1/14/2009 |
|---|---|---|---|
| Attorney for State: | KATHRYN H. GURLEY | Attorney for Defendant: | TERRY D. MCEACHERN |

| Offense: AGGRAVATED SEXUAL ASSAULT | |
|---|---|

**FILED** 11:25 a.m./p.m.
Jan 16 2009
District Court, Bailey County, Texas
Elaine Parker, District Clerk
Beddy Tarumga, Deputy

| Charging Instrument: INDICTMENT | Statute for Offense: 22.021 Penal Code |
|---|---|
| Date of Offense: 9/11/2008 | |
| Degree of Offense: 1ST DEGREE FELONY | Plea to Offense: GUILTY | Findings on Deadly Weapon: N/A |

Terms of Plea Bargain:
**EIGHT YEARS DEFERRED ADJUDICATION PROBATION, $3,000 FINE, $783.08 RESTITUTION**

| Plea to 1st Enhancement Paragraph: | N/A | Plea to 2nd Enhancement/Habitual Paragraph: | N/A |
|---|---|---|---|
| Findings on 1st Enhancement Paragraph: | N/A | Findings on 2nd Enhancement/Habitual Paragraph: | N/A |

### ADJUDICATION OF GUILT DEFERRED; DEFENDANT PLACED ON COMMUNITY SUPERVISION.

### PERIOD OF COMMUNITY SUPERVISION: EIGHT (8) YEARS

| Fine: $3,000.00 | Court Costs: $390.00 | Restitution: $783.08 | Restitution Payable to: ☐ VICTIM (see below) ☒ AGENCY/AGENT (see below) |
|---|---|---|---|

Sex Offender Registration Requirements apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62

The age of the victim at the time of the offense was **three (3) years.**

| Time Credited: | N/A DAYS NOTES: N/A |
|---|---|

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in Bailey County, Texas. The State appeared by her District Attorney as named above.

Counsel / Waiver of Counsel (select one)
☒ Defendant appeared in person with Counsel.
☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

Both parties announced ready for trial. Defendant waived the right of trial by jury and entered a plea as indicated above. The Court admonished the Defendant as required by law. It appeared to the Court that Defendant was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of this plea. The Court received the plea and entered it of record. Having heard the evidence submitted, the Court FINDS such evidence substantiates Defendant's guilt. The Court FINDS that, in this cause, it is in the best interest of society and Defendant to defer proceedings without entering an adjudication of guilt and to place Defendant on community supervision.

The Court FINDS the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court ORDERS that Defendant is given credit noted above for the time spent incarcerated. The Court ORDERS Defendant to pay all fines, court costs, and restitution as indicated above.

Vol. 17 Pg. 25
District Criminal Minutes

Order_of_Deferred_Adjudication_050106        Page 1 of 2

43

The Court ORDERS that no judgment shall be entered at this time. The Court further ORDERS that Defendant be placed on community supervision for the adjudged period so long as Defendant abides by and does not violate the terms and conditions of community supervision. See TEX. CODE CRIM. PROC. art. 42.12 § 5(a).

### Furthermore, the following special findings or orders apply:

THE COURT ORDERS DEFENDANT TO APPLY FOR AN ORIGINAL OR RENEWED TEXAS DRIVER'S LICENSE OR PERSONAL IDENTIFICATION CERTIFICATE NOT LATER THAN 30 DAYS AFTER RELEASE FROM CONFINEMENT OR UPON RECEIPT OF WRITTEN NOTICE FROM THE TEXAS DEPARTMENT OF PUBLIC SAFETY (DPS). THE COURT FURTHER ORDERS DEFENDANT TO ANNUALLY RENEW THE LICENSE OR CERTIFICATE. THE DPS SHALL PLACE AN INDICATION ON THE DEFENDANT'S DRIVER'S LICENSE OR PERSONAL IDENTIFICATION CERTIFICATE THAT THE DEFENDANT IS SUBJECT TO THE SEX OFFENDER REGISTRATION REQUIREMENTS. THE COURT ORDERS THE CLERK OF THE COURT TO SEND A COPY OF THIS ORDER TO THE DPS AND TO DEFENDANT. TEX. CCP ART. 42.016.

RESTITUTION PAYABLE TO THE NEW MEXICO COALITION OF SEXUAL ASSAULT PROGRAMS, INC.

Signed and entered on January 16, 2009

GORDON H. GREEN
JUDGE PRESIDING

Clerk: Elaine Parker



Right Thumbprint

Order_of_Deferred_Adjudication_056106

Page 2 of 2

Vol. 17 Pg. 26
District Criminal Minutes

44

NO. 2557

| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| vs. | § | 287TH JUDICIAL DISTRICT |
| | § | |
| JOHN DENNIS ANTHONY | § | BAILEY COUNTY, TEXAS |

## ORDER FOR EXAMINATION REGARDING INCOMPETENCY

On December _3_, 2008, the Court considered the suggestion of incompetency to stand trial in this cause with respect to John Dennis Anthony, Defendant, and the Court is of the opinion that there is evidence to support a finding of incompetency and that Defendant should be examined as provided by Article 46B.021 of the Texas Code of Criminal Procedure.

It is, therefore, ORDERED that Dr. Robert Morgan shall examine John Dennis Anthony to determine if John Dennis Anthony is incompetent to stand trial in this cause, as provided by Article 46B of the Texas Code of Criminal Procedure.

John Dennis Anthony is ORDERED to submit to the examination by Dr. Robert Morgan. It is further ORDERED that Dr. Robert Morgan shall do such examination at the Bailey County Jail

It is further ORDERED that a written report of the examination as described below be submitted to the Court not later than thirty (30) days of the date of this Order.

Said written report shall state the expert's opinion on defendant's competency or incompetency to stand trial or explain why the expert is unable to state such an opinion and shall also: (a) identify and address specific issues referred to the expert for evaluation, (b) document that the expert explained to the defendant the purpose of the evaluation, the persons to whom a report on the evaluation is provided, and the limits on rules of confidentiality applying to the relationship between the expert and the defendant, (c) include a description of the procedures used in the

Vol. 16 Pg. 707
District Cr          Minutes

610/410

02/28/2014 09:48 PAX

28

examination, (d) state the examiner's observations, findings, and opinions pertaining to the Defendant's competency to stand trial, and (e) any recommended treatment.

Furthermore, if the examiner concludes that Defendant is incompetent to stand trial, the report shall include:

(1) the exact nature of the deficits resulting from the defendant's mental illness or mental retardation, if any, that impact the factors listed in Article 46B.024, contributing to the defendant's incompetency; and

(2) prospective treatment options, if any, appropriate for the defendant.

It is further ORDERED that the expert's report may not state the expert's opinion on the defendant's sanity at the time of the alleged offense, if in the opinion of the expert the defendant is incompetent to proceed.

It is further ORDERED that the expert provide the expert's report to the Court and the appropriate parties in the form provided by the Texas Correctional Office on Offenders with Medical or Mental Impairments under Section 614.0032(b) of the Health and Safety Code.

It is further ORDERED that this matter is set for a hearing before this Court on ~~December~~ _January_ _7_, ~~2008~~ _2009_, at Muleshoe, Texas at which time the Court shall consider the reports of any experts herein. On the date of such hearing, the Court shall determine if there is evidence to support a finding of incompetency to stand trial and if it will be necessary to impanel a jury for an incompetency trial as provided by Article 46B.051 of the Texas Code of Criminal Procedure.

Signed on ___DEC 3 2008___.

4:30

Dec. 3 2008

District Court, Bailey County Texas
Elaine Parker, District Clerk

Elaine Parker

JUDGE PRESIDING

Vol. 16 Pg. 708
District Criminal Minutes